United States Court of Appeals,

Fifth Circuit.

No. 91–2120.

HERMANN HOSPITAL, Plaintiff–Appellant,

v.

MEBA MEDICAL AND BENEFITS PLAN, Defendant–Appellee.

April 29, 1992.

Appeals from the United States District Court for the Southern District of Texas.

Before WILLIAMS and WIENER, Circuit Judges, and LITTLE, District Judge.[*]

WIENER, Circuit Judge:

Hermann Hospital (Hermann) brought suit to recover payment for services it provided to a patient whose husband was a participant in an ERISA-governed welfare benefit plan. Hermann claims entitlement to the payments as an assignee of the covered patient. The district court rendered a take nothing judgment, holding that Hermann did not have standing to bring suit as no valid assignment had occurred. Finding that the district court erred, we reverse and render judgment in favor of Hermann.

I.

FACTS AND PROCEEDINGS

In May 1982, Patricia Nicholas was admitted to Hermann for cancer treatment. She remained hospitalized there and continued to receive treatment until her death in November of that year. Mrs. Nicholas' husband was a participant in the MEBA Medical and Benefits Plan (alternatively, MEBA or the Plan) and had designated Mrs. Nicholas as a beneficiary. The Plan contained an anti-assignment provision, but MEBA's policy was to recognize authorizations by participants and beneficiaries for MEBA to pay medical providers directly for their services. At the time of her admission to Hermann, Mrs. Nicholas signed a document prepared by Hermann entitled "Assignment

[*]District Judge of the Western District of Louisiana, sitting by designation.

of Insurance Benefits."  That document provided, in pertinent part:

> THE FOLLOWING AUTHORIZATION PERTAINS TO THE PATIENT ... AND TO THE ADMISSION/OCCASION OF SERVICE INDICATED.
>
> ASSIGNMENT OF INSURANCE BENEFITS
>
> I hereby irrevocably assign and transfer to Hermann Hospital (hereinafter referred to as the "Hospital"), all rights, title and interest in the benefits payable for services rendered by the Hospital, provided in any insurance policy(ies), under which I am insured.... Said irrevocable assignment and transfer shall be for the purpose of granting the Hospital, an independent right of recovery on said policy(ies) of insurance, but shall not be construed to be an obligation of the Hospital to pursue any such right of recovery.  Provided, however, this assignment and transfer shall not take away my standing to make claim or sue for benefits individually should coverage be denied by any insurance company(ies).
>
> I hereby authorize all insurance company(ies) under which I am insured, to pay directly to the Hospital, all benefits due under said policy(ies) by reason of services rendered therein.

A day or so later, Mr. Nicholas, as the family member who was actually a participant in the Plan, signed a "Statement of Claim for Dependents."  That form, prepared by MEBA, provided that "[b]enefits payable may be assigned providing [sic] proper authorization is completed (Part IV) or submitted with statement."  Mr. Nicholas completed Part IV of that statement, entitled "Assignment of Benefits," which provided, "I hereby authorize payment of medical benefits directly to the provider of services indicated."

MEBA did not pay Hermann for the medical services it had provided to Mrs. Nicholas, which totalled $341,921.  According to MEBA, that amount constituted the largest claim ever submitted to the Plan.

Hermann brought suit against MEBA pursuant to ERISA to recover payment for the benefits it had provided to Mrs. Nicholas under the ERISA-governed welfare benefit plan.  Hermann's complaint also asserted state common law claims of negligent misrepresentation and fraud.  The district court dismissed the complaint, holding that Hermann did not have standing to sue under ERISA either in its own right or derivatively as an assignee of Mrs. Nicholas and that ERISA preempted Hermann's state law claims.  The district court entered a take nothing judgment and taxed

costs of $37,900 against Hermann.

In *Hermann Hospital v. MEBA Medical and Benefits Plan*[1] (*Hermann I* ), we noted that Hermann did not contend that it was a plan "participant," "beneficiary" or "fiduciary"—the "enumerated parties" allowed to pursue an action under Section 502(a)[2] of ERISA.[3] We held that Hermann had no standing to sue as a "non-enumerated party" as Section 1132(a) constitutes an exclusive jurisdictional grant.[4] We also held, however, that if Mrs. Nicholas had made a valid assignment to Hermann of her right to receive payments for benefits under the Plan, Hermann would have derivative standing as an assignee to sue MEBA.[5] As the district court had not determined whether a valid assignment had been made, we remanded the case for the district court to decide that issue. We also affirmed the district court's holding that ERISA preempted Hermann's state law claims.[6]

On remand, the district court in a second bench trial held that Mrs. Nicholas did not make a valid assignment of her Plan benefits to Hermann because she specifically reserved the right to sue, thus retaining control over the subject matter of the assignment. In an alternative holding against Hermann, the district court found ambiguous the document Hermann claimed was an assignment of Mrs. Nicholas' benefits to Hermann. Thus the district court considered evidence of Mrs. Nicholas' and Hermann's intent and concluded that the parties intended the document merely to authorize MEBA to make direct payment to Hermann, not to assign to Hermann Mrs. Nicholas' right to payments for benefits furnished by Hermann. Therefore, held the district court, Hermann was not an

---

[1]845 F.2d 1286 (5th Cir.1988).

[2]29 U.S.C. § 1132(a) (1976).

[3]*Hermann I,* 845 F.2d at 1287.

[4]*Id.* at 1288–89.

[5]*Id.* at 1290.

[6]*Id.* at 1291.

assignee and thus lacked standing to sue MEBA. The district court entered a take nothing judgment and taxed costs of $37,900 against Hermann, from which Hermann appeals.

## II.

## ANALYSIS

A. *Validity of Assignment.*

The district court held that Mrs. Nicholas' reservation of the right to sue was fatal to the purported assignment of her benefits under the Plan because Mrs. Nicholas retained control over the subject matter of the assignment. Hermann argues that, as Mrs. Nicholas reserved the right to sue only in the event that coverage was denied, Hermann as assignee received, among other rights, the right to sue to recover payment for covered benefits under the Plan in all other situations. As MEBA did not deny coverage, the argument continues, Mrs. Nicholas did not retain any control over the subject matter of the assignment and her reservation did not render the assignment invalid, thereby placing the right to sue for payment of covered benefits solely in Hermann's possession. We agree.

We review conclusions of law by the district court *de novo.*[7] The district court cited *Pape Equipment Co. v. I.C.S., Inc.,*[8] in support of its holding. In *Pape,* the plaintiff alleged that it had received an assignment of a cause of action against the defendant. However, the agreement that purportedly assigned the cause of action contained no words of assignment and provided that the assignor "must concur in any settlement of the cause of action." The Texas court of appeals held that there was no valid assignment of the cause of action because the agreement was "void of any words of transfer so essential to an assignment."[9] The court stated that the retention of some control over the settlement process was another factor working against the finding of a valid assignment.[10]

[7]*Branch–Hines v. Hebert,* 939 F.2d 1311, 1317 (5th Cir.1991).

[8]737 S.W.2d 397 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

[9]*Id.* at 401.

[10]*Id.*

*Pape* is distinguishable from the instant case. Unlike the document in *Pape,* Mrs. Nicholas' purported assignment contained express words of assignment. In addition, the assignor in *Pape* attempted to reserve a part of the only right that was allegedly assigned—a cause of action—while here Mrs. Nicholas reserved only one of several distinct rights, one unrelated to the object of her assignment.

We hold that the document signed by Mrs. Nicholas upon her admission to the hospital was a valid assignment to Hermann of her right to payment by MEBA for benefits covered under the Plan and furnished by Hermann. The document expressly assigned to Hermann "all rights, title and interest in the benefits payable for services rendered" while reserving to Mrs. Nicholas only the right to sue "should coverage be denied." Once Mrs. Nicholas' coverage was established, the right to sue for payment of benefits provided by Hermann belonged solely to Hermann as a result of the assignment. MEBA never denied coverage; thus, as Hermann had rendered services, it was entitled as assignee to sue to recover payment for those services to the full extent they were covered under the Plan.

We further find that the assignment document was not ambiguous. The right to sue for denial of coverage is separate and distinct from the right to sue to recover payment for Plan benefits rendered by Hermann and covered under the Plan. Thus, the language reserving Mrs. Nicholas' right to sue if coverage were denied is in no way contradictory to the assignment language. In addition, we find no ambiguity created by the language which authorizes the Plan to make direct payments to Hermann for covered benefits it provides to Mrs. Nicholas. MEBA argues that the direct payment language in the assignment signed by Mrs. Nicholas, and the separate direct payment authorization signed by Mr. Nicholas, would be unnecessary if the purpose of the document was to assign all rights to Hermann because assignment includes the right to receive payment. We conclude, however, that the authorization language represents nothing more than cautious and prudent "belt and suspenders" drafting—direct payment being in the nature of specific items typically found in "including without limitation" language—rather than constituting evidence of ambiguity.

The district court erred in holding that the assignment document was ambiguous and thus erred in considering evidence of the intent of Mrs. Nicholas and Hermann. We add in passing, however, that were we called upon to do so we would also find that Hermann and Mrs. Nicholas clearly and unambiguously intended to effectuate an assignment to Hermann of the right to payments for covered services rendered by Hermann, including the right of Hermann to sue to collect such payments if MEBA failed to remit them directly to Hermann as expressly authorized.

B. *Effect of the Anti–Assignment Clause.*

The Plan contained an anti-assignment clause that provided:

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

At trial, MEBA contended that the anti-assignment clause rendered any purported assignment invalid. As the district court held that Mrs. Nicholas had not validly assigned her rights under the Plan to Hermann, that court did not consider MEBA's contention. But, as we now hold that Mrs. Nicholas validly assigned her payment rights to Hermann, we must now decide whether the Plan's anti-assignment clause destroyed the efficacy of that assignment.

Mrs. Nicholas entered Hermann Hospital and executed the assignment document in May 1982. MEBA confirmed to Hermann that Mrs. Nicholas was covered under the Plan. She died in November 1982. During the six months of Mrs. Nicholas' hospitalization, Hermann maintained continuous communication with MEBA, attempting to obtain periodic payments on the claim, but MEBA kept postponing payment, asserting that it was "investigating" the claim. Finally, in December 1985, more than three years after Mrs. Nicholas' death, Hermann filed suit against MEBA to recover payment for the services it had furnished to Mrs. Nicholas as covered benefits under the Plan. MEBA then for the first time asserted the anti-assignment clause as a basis for its refusal to pay. Hermann argues that as MEBA failed to assert the anti-assignment clause until more than three years after

Hermann first requested payment, it is estopped to do so now.  We agree.

The anti-assignment clause was contained in the documentation establishing the Plan. Hermann, which was not privy to the Plan, had no opportunity to review that documentation.  It was MEBA's responsibility to notify Hermann of that clause if it intended to rely on it to avoid any attempted assignments.  MEBA contends that it never asserted the anti-assignment clause because it treated the assignment document as nothing more than an authorization by Mrs. Nicholas for MEBA to pay benefits directly to Hermann, and that it believed that Hermann had a similar view of the document.  Thus, the argument continues, MEBA believed the clause to be inapplicable so there was never a reason to assert the non-assignment clause until Hermann formally claimed an assignment in its lawsuit.

We reject MEBA's argument that it had a mistaken view of the assignment document.  As we have held, facially the document purported to be an assignment of the beneficiary's right to receive *payment* for Plan benefits.  Regardless of how MEBA may have subjectively interpreted that document, MEBA could not choose to ignore the title of the document as an assignment or the strong language of assignment it contained.  It had to be clear to MEBA that Hermann, in admitting and providing services to Mrs. Nicholas, was relying on that assignment as its entitlement to recover payment for those Plan benefits that Hermann furnished to Mrs. Nicholas.  Thus, it was unreasonable for MEBA to lie behind the log for three years without once asserting the anti-assignment clause, of which Hermann had no knowledge, while duplicitously dragging out the ongoing negotiations to liquidate the claim.

MEBA's argument is further weakened by the language of MEBA's own form, entitled "Statement of Claim for Dependents," that Mr. Nicholas completed and returned to MEBA a few days after Mrs. Nicholas entered the hospital.  That standardized form, prepared and furnished by MEBA, expressly provided that benefits payable under the Plan could be assigned and that assignment

could be effectuated by the participant's completion of Part IV—which is exactly what Mr. Nicholas, as the plan participant, did. In the face of that language, MEBA cannot contend that neither MEBA nor Hermann interpreted the document signed by Mrs. Nicholas as an assignment of benefits. We hold that MEBA is estopped to assert the anti-assignment clause now because of its protracted failure to assert the clause when Hermann requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits.

Even if MEBA had not been estopped to assert anti-assignment, that clause still would not have destroyed Mrs. Nicholas' assignment of benefits to Hermann. We interpret the anti-assignment clause as applying only to unrelated, third-party assignees—other than the health care provider of assigned benefits—such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits. The typical "spendthrift" language of the clause is clearly intended to prevent either voluntary or involuntary assignment of payments under the Plan to those creditors of the participant or beneficiary of the Plan which have no relationship to the providing of covered benefits. The anti-assignment clause should not be applicable, however, to an assignee who, as here, is the provider of the very services which the plan is maintained to furnish. Were we to conclude otherwise, health care providers such as Hermann, which is entitled to payment for the services it provided as benefits covered under the Plan, would be unable to recover for those services unless Mr. Nicholas were to sue MEBA for recovery of benefits and Hermann in turn sue Mr. Nicholas. Such a result would be inequitable as Nicholas, knowing that any recovery from MEBA would immediately go to Hermann, would have no incentive to pursue payment—and might be reluctant to sue the Plan maintained by his own employer or his own union. Thus, the anti-assignment clause, even if timely asserted, would likely not have prevented Mrs. Nicholas from assigning to Hermann the right to payment for benefits it furnished as the provider of the health care services covered under the Plan.

C. *Hermann's Standing as a Beneficiary.*

ERISA Section 3(8) provides that a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is entitled to a benefit thereunder."[11] Hermann argues that it qualifies as a beneficiary under the Plan because Mr. Nicholas, by signing the "Statement of Claim for Dependents" form which authorized the Plan to make payments directly to Hermann, designated Hermann as a person entitled to a benefit.

In its first consideration of this case, the district court held that Hermann was not a participant, beneficiary or fiduciary. Hermann raised the argument that it had standing to sue as a beneficiary for the first time in two supplemental briefs to this court in *Hermann I,* but we did not address the argument. On remand, Hermann again raised the argument that it was a beneficiary, but not until after trial on the merits.[12] Hermann asserts that it could not address the issue sooner because MEBA did not produce the claim forms—on which Hermann bases this argument—in response to discovery requests until shortly before the second trial.

This court will not consider an argument made for the first time on appeal unless it involves a purely legal question and the failure to consider it would result in a miscarriage of justice.[13] Hermann asserts that we must consider its argument under that exception. We disagree. As we hold that Hermann has standing as an assignee to seek recovery of payment for the benefits it provided, no miscarriage of justice will result from not considering the argument that Hermann is also a beneficiary in its own right. In addition, even were we to consider the argument, it has no merit. We perceive a distinction between the rights of a beneficiary, as referred to in ERISA, to receive covered

---

[11] 29 U.S.C. § 1002(8).

[12] Hermann filed a motion to alter or amend the judgment of the district court on remand, to which MEBA filed a memorandum in opposition. Hermann filed a response to MEBA's memorandum, in which it raised the beneficiary argument for the first time at the district court level.

[13] *Interfirst Bank Abilene, N.A. v. Federal Deposit Ins. Corp.,* 777 F.2d 1092 (5th Cir.1985).

medical services or reimbursement therefor, and one entitled to receive payment as an assignee of such a beneficiary. Neither Mr. Nicholas' act of authorizing the Plan to make payments directly to Hermann, nor Mrs. Nicholas' assignment of the right to recover payments for benefits provided, elevated Hermann to the status of beneficiary under the Plan.

D. *Preemption of State Law Claims.*

Hermann's original complaint included state law claims against MEBA for fraud and negligent misrepresentation. The district court dismissed those claims, holding that they were preempted by ERISA. We affirmed the dismissal in *Hermann I.*[14] We noted that the United States Supreme Court had held that ERISA preempted state common law claims brought by ERISA plan beneficiaries who alleged the failure to pay plan benefits.[15] Hermann argued that those Supreme Court cases were distinguishable because, unlike the plaintiffs in those cases, Hermann was not an enumerated party under ERISA Section 502(a). We rejected that contention, holding that (1) the argument was inconsistent with Hermann's assertion that it was an assignee, and (2) adopting the argument would allow parties who lacked standing to sue under ERISA to circumvent its provisions by filing suit in state courts under state law, thereby obtaining advantages denied to parties enumerated under ERISA Section 502(a).[16]

On remand, the district court refused to make findings of fact or conclusions of law on the state law claims, noting that we had affirmed its prior dismissal of those claims in *Hermann I.* In this appeal, Hermann argues that the district court misinterpreted our holding in *Hermann I* on the preemption issue and that Hermann should be allowed to assert its state law claims. Hermann cites

---

[14]845 F.2d at 1291.

[15]*Id.* at 1290 (citing *Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

[16]*Id.*

*Mackey v. Lanier Collection Agency and Service, Inc.,*[17] a case decided by the Supreme Court subsequent to *Hermann I.* In *Mackey,* a collection agency obtained money judgments against several participants in an ERISA-qualified employee welfare benefit plan. The agency attempted to garnish future payments to which the participants under the plan would become entitled for benefits. The Court held that a Georgia statute prohibiting the garnishment of benefits under ERISA benefit plans was preempted by ERISA because the statute singled out ERISA welfare benefit plans for different treatment under state garnishment procedures.[18]

The Court then addressed the plan's contention that ERISA preempted the entire Georgia garnishment procedure, t hereby preventing the agency from garnishing the plan benefits. In its analysis of that issue, the Court observed that there are two types of civil actions that may be brought against ERISA plans. The Court observed additionally that, as ERISA does not provide an enforcement mechanism for collecting judgments obtained under either of those types of actions, judgment creditors of ERISA plans must rely on state law methods of collecting judgments. The Court recognized that if it were to hold that state law methods were preempted by ERISA, there would be no way to enforce judgments against ERISA plans. Therefore, held the Court, the Georgia garnishment procedure was not preempted by ERISA.[19]

The two types of actions against an ERISA plan that the Supreme Court recognized were: (1) actions under ERISA § 502 to recover plan benefits or to enforce a participant's rights under a plan, and (2) "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even *torts committed by a ERISA plan.*"[20] In reference to the second type of action, the Court stated: "Petitioners and the United States concede that these suits, although

---

[17]486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

[18]*Mackey,* 486 U.S. at 830, 108 S.Ct. at 2185.

[19]*Id.* 486 U.S. at 832–34, 108 S.Ct. at 2186–87.

[20]*Id.* at 832–33, 108 S.Ct. at 2187 (emphasis added).

obviously affecting an involving ERISA plans and their trustees, are not preempted by ERISA."[21] Hermann now insists that its fraud and misrepresentation claims qualify as "run-of-the-mill state-law claims" of the nature discussed in *Mackey* as not preempted by ERISA.

Hermann also relies on a Fifth Circuit opinion issued after both *Hermann I* and *Mackey*.[22] In that case, the beneficiary of an ERISA plan sought treatment at Memorial Hospital. Memorial received a verification of coverage from the plan, after which the beneficiary/patient assigned her benefits under the plan to Memorial. Upon Memorial's request for payment, the plan informed Memorial that the patient was not eligible for benefits and denied the claim. Memorial sued the plan, asserting, among other claims, a claim against an ERISA plan under article 21.21 of the Texas Insurance Code (a codification of the negligent misrepresentation cause of action). The district court dismissed that claim, holding that, as the claim was brought to recover benefits through Memorial's derivative standing as an assignee, the claim was preempted by ERISA.

On appeal, this court held that Memorial's state law claim was not preempted because Memorial brought that claim in its independent status as a hospital and neither sought to recover benefits from the plan nor claimed that the plan acted improperly in processing and denying the hospital's claims.[23] The panel addressed *Hermann I* and stated that it did not control the disposition of *Memorial Hospital* because, although *Hermann I* held that the state law claims were preempted, "it is clear from the court's analysis that it considered [those] claims to be dependent on, and derived from, the rights of the plan beneficiaries to recover benefits under the terms of the plan."[24] For additional support, the panel cited *Mackey* as standing for the proposition that tort actions brought

---

[21]*Id.* at 833, 108 S.Ct. at 2187.

[22]*Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990).

[23]*Id.* at 250.

[24]*Id.* at 249 n. 20.

by non-ERISA entities against ERISA plans are not preempted.[25] The panel further distinguished *Hermann I* by stating, "[i]n any case, *Hermann* was decided before the Supreme Court issued its opinion in *Mackey*. We believe that *Mackey* places a different light on state law actions brought by non-ERISA entities against an ERISA plan or fiduciary."[26]

Here, Hermann argues that, as *Memorial Hospital* pointed out, the *Hermann I* holding addressed only the issue of Hermann's standing to sue as Mrs. Nicholas' assignee, but that Hermann also has independent standing to sue on its state law claims and that such standing has nothing to do with its right to recover the benefits as an assignee. Hermann claims that its tort claims are not brought as an assignee for the recovery of benefits or for the improper processing of benefits under an ERISA plan, but rather are brought to recover the damages Hermann suffered by MEBA's actions of fraud and misrepresentation.

Hermann's argument is the same argument that we rejected in *Hermann I*. We clearly held that ERISA preempted Hermann's state law claims irrespective of whether Hermann brought those claims as an enumerated party under ERISA Section 502(a) or in another capacity. That holding has therefore become the law of the case unless an exception to that doctrine applies. The law of the case doctrine requires that decisions of law made on a former appeal must be followed in all subsequent proceedings in the same case unless:

> (i) a subsequent trial produces substantially different evidence; (ii) the prior decision was clearly erroneous and would work manifest injustice; or (iii) controlling authority has since made a contrary decision of law applicable to the issue.[27]

Hermann argues that the law of the case doctrine does not apply because, as "controlling authority making a contrary decision on the issue" of preemption, the subsequent decisions in *Mackey* and

---

[25]*Id.* at 248.

[26]*Id.* at 249 n. 20.

[27]*Falcon v. General Telephone Co.,* 815 F.2d 317 (5th Cir.1987).

*Memorial Hospital* constitute an exception to that doctrine.

We disagree. In *Christopher v. Mobil Oil Corp.,*[28] Mobil added a lump sum retirement option to its ERISA-governed pension plan in 1977, which option would allow qualified employees to receive the actuarial equivalent of their accrued annuity, discounted at five percent, in one payment upon retirement. To qualify, an employee had to have an accrued lump sum pension benefit of at least $250,000. In 1984, Mobil announced changes to the lump sum option, which would apply to all employees retiring after January 1, 1985. Those changes included an increase in the discount rate to nine and one-half percent and an increase in the eligibility threshold to $450,000. Employees eligible under the old lump sum option thus had a six-month window in which they could retire under the lower discount rate and lower eligibility threshold. Approximately 1,100 employees elected to take early retirement during that window period. Two months after Mobil announced the changes to its lump sum option, in response to the IRS's concern that the amended plan could result in benefits favoring highly compensated employees, Mobil again amended its plan. That amendment allowed Mobil, in its sole discretion, to waive the eligibility threshold in individual cases. Mobil did not notify its employees of the waiver provision until October 1985—nine months after the expiration of the six-month window.

A group of Mobil employees who had elected early retirement during the six-month window sued Mobil, alleging that Mobil had induced them into retirement without having to pay them an early retirement bonus. Among the employees' claims were common law claims of fraud, civil conspiracy, unlawful interference with contract rights, breach of employment contract, negligence and gross negligence. The district court granted Mobil's motion for judgment on the pleadings on those state law claims, holding that they were preempted by ERISA.

On appeal, the employees argued that their state law claims avoided preemption because they

---

[28]950 F.2d 1209 (5th Cir.1992).

qualified as "run-of-the-mill state law claims" under *Mackey.* We rejected that argument and affirmed the district court, holding that Mobil's conduct related directly to the operation of an ERISA plan and thus were "a far cry from the "run-of-the-mill' claims alluded to in *Mackey.*"[29] The same is true in the instant case. Hermann's state law claims of fraud and negligent misrepresentation are based upon the failure of MEBA to pay benefits to which Hermann was entitled. Like the state law claims in *Christopher,* Hermann's claims have a nexus with the ERISA plan and its benefit system. Thus, they too are a far cry from the "run-of-the-mill state law claims" referred to in the *Mackey* dictum.

We hold that neither *Mackey* nor *Memorial Hospital* affect the application of the law of the case doctrine to the preemption issue in this case. The holding of *Mackey* was that ERISA preempted Georgia's anti-garnishment statute but that it did not preempt Georgia's general garnishment procedures. To arrive at its holding, the Court discussed the different types of actions that can be brought against an ERISA plan and stated that the parties had *conceded* that "run-of-the-mill state law claims" such as torts committed by ERISA plans were not preempted by ERISA. As the Court was not faced with a tort action in *Mackey,* it did not actually hold that state law tort actions are not preempted, and certainly it did not hold that *all* tort actions against an ERISA plan would escape preemption. There may exist some tort actions that could be brought against an ERISA plan without preemption, but such actions could not be closely related to or intertwined with the operation or the benefits of the plan.

As the tort dicta in *Mackey* has no effect on our holding in *Hermann I* that ERISA preempted Hermann's state law claims, the dicta in *Memorial Hospital* discussing *Hermann I* in light of *Mackey* likewise does not change the law of the case. Hermann's state law claims are essentially identical to those we held to be preempted in *Christopher,* which was decided after both *Mackey* and *Memorial Hospital.* For that reason, Hermann's state law claims are likewise preempted.

---

[29]*Id.* at 1219.

III.

CONCLUSION

Mrs. Nicholas made a valid assignment of her right to payment for benefits furnished by Hermann under the Plan. Her assignment was unambiguous and was not destroyed by her reservation of the right to sue MEBA in the event that coverage was denied. MEBA is estopped to assert the anti-assignment clause asserted for the first time by MEBA more than three years after Hermann first requested payment. The law of the case is that ERISA preempted Hermann's state law claims. No exception to that doctrine applies here as there has been no controlling authority making a contrary decision on the issue.

Hermann is entitled to recover payment as an assignee for the services it rendered to Mrs. Nicholas under the Plan, but is not entitled to assert state law claims as proposed here because they are preempted. We therefore AFFIRM the judgment of the district court to the extent it refused to address Hermann's state law claims, but REVERSE the judgment of the district court to the extent it denied Hermann's recovery as an assignee and taxed costs against Hermann, and RENDER judgment in favor of Hermann in the principal amount of $341,921; but we REMAND to the district court for the limited purpose of issuing a final judgment, including interest, costs and, if proper, attorneys' fees, consistent herewith.

SO ORDERED.