United States Court of Appeals,

Fifth Circuit.

No. 96-20850

Summary Calendar.

CYPRESS FAIRBANKS MEDICAL CENTER INC., Plaintiff-Appellant,

v.

PAN-AMERICAN LIFE INSURANCE COMPANY; National Insurance Services, Inc., Defendants-Appellees.

April 17, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before DAVIS, EMILIO M. GARZA and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This case requires us to determine the scope of our decision in *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990), in which we held that a third-party provider's state-law claim for misrepresentation of medical coverage was not preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. Because we find that the district court erred in concluding that the plaintiff's state-law claim for misrepresentation was preempted, we reverse. In addition, because this case was removed to federal court on the ground that the plaintiff's claim implicated ERISA—thereby giving rise to federal question jurisdiction—and because we conclude that ERISA is not implicated, we remand this case to the district court with instructions to remand the plaintiff's state-law claim to Texas state court.

1

BACKGROUND

In December 1993, Deborah J. Meyer established an employee welfare benefit plan which provided group health insurance for Meyer's employees and their dependents. The insurance plan was funded through insurance purchased from the defendant Pan-American Life Insurance Company. National Insurance Services acted as Pan-American's agent. Both parties agree that the health insurance plan is an ERISA plan.

Jack Schwartz, one of Meyer's full-time employees, was admitted to Cypress Hospital and ran up a bill of $178,215.44 in medical services related to a respiratory ailment. Prior to admitting Schwartz, Cypress on two occasions was informed by Pan-American's agent, National Insurance Services, that Schwartz was covered by Meyer's health insurance plan. It is undisputed that Cypress extended health services in reliance on National's representations, that Schwartz was in fact *not* covered by the health insurance plan, and that National therefore incorrectly informed Cypress about Schwartz's status under the health plan. Cypress eventually submitted a bill for services to National, who refused to pay on the ground that Schwartz's "coverage [was] rescinded as of [the] effective date."[1]

Cypress then brought suit against Pan-American and National (defendants) in Texas state court alleging a violation of § 21.21

---

[1]The meaning of this phrase is not altogether clear. Nor does the record reveal the precise reasons for National's denial of coverage. For our purposes, however, Cypress has claimed, and the defendants appear to agree, that National denied coverage because Schwartz was not covered at all under the ERISA plan.

2

of Texas's Insurance Code. Specifically, Cypress argued that the defendants negligently misrepresented Schwartz's coverage under the health insurance plan, and as such, were liable for deceptive and unfair trade practices. The case was eventually removed to federal court on the basis of federal question jurisdiction. The defendants then filed a motion to dismiss, or in the alternative, a motion for summary judgment, arguing that Cypress's claim was preempted by ERISA. The district court agreed with the defendants and entered a take-nothing judgment against Cypress. This appeal followed.

## DISCUSSION

This case requires us to revisit our holding in *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990), in which we held that a state-law cause of action for negligent misrepresentation brought pursuant to Texas Insurance Code § 21.21 was *not* preempted by ERISA. *Id.* at 245-50. Cypress claims *Memorial* controls this case. The defendants, on the other hand, argue that *Memorial* is distinguishable because "this Court [in *Memorial* ] distinguished between a situation involving an alleged misrepresentation as to the *extent* of coverage, and one as to the *existence* of coverage at the time of the misrepresentation." Red Brief, at 5 (citing *Memorial,* 904 F.2d at 246[2]). The district

---

[2]The defendants erroneously cited to page 25 6 of *Memorial.* Because our opinion in *Memorial* does not extend to page 256, we assume that the defendants are directing our attention to page 24 6, which allegedly contains language that supports the defendants' position.

court did not rely on or cite our decision in *Memorial*.[3] Instead, the district court concluded that Cypress's

> *claims are indistinct from a participant's claim that his employer misrepresented the plan benefits.* ... It does not matter whether it was the employee or his hospital that was misled by the benefit plan-related entities. Extensions of coverage however sought are not the plan; the preemption works like a [*sic* ] omnipotent parole evidence rule to block all extension of amounts recoverable from entities whose involvement is related to plan benefits.

Blue Brief, Appendix, at 5 (emphasis added). Because we find that the defendants have erroneously concluded that *Memorial* is inapplicable to this case and that the district court erred in not applying *Memorial,* we reverse the district court's holding that Cypress's claims are preempted by ERISA.

I. ERISA PREEMPTION AND OUR DECISION IN *MEMORIAL*

We begin with a brief review of the logic and reasoning of our decision in *Memorial* because that decision controls our disposition of Cypress's claims in this case. ERISA preempts "any and all State laws insofar as they now or hereafter *relate to* an employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). In *Memorial,* we set out to define the meaning of "relate to" in cases involving independent, third-party providers of medical services, who assert state-law causes of action for misrepresentation against insurance companies that have misrepresented the existence of health coverage to the detriment of the third-party provider.

---

[3]The district court incorporated by reference its preemption opinion "in a parallel case" as the basis for decision in this case. Rec. at 133 (referring to *Hermann Hosp. v. Pan Am. Life Ins. Co.,* 932 F.Supp. 899 (1996)). Our analysis of the district court's reasoning is therefore based on the district court's opinion in *Hermann.*

Memorial Hospital was incorrectly informed by Northbrook Insurance Company that an employee of Noffs, Incorporated was covered under Noffs's health insurance plan. The benefit plan came within ERISA's scope. After tendering the employee's hospital bill to Northbrook, Memorial was informed that the employee in fact was not covered under Noffs's plan. Memorial sued, alleging, among other things, negligent misrepresentation in violation of § 21.21 of Texas's Insurance Code. The district court held that Memorial's state-law cause of action for misrepresentation was preempted by ERISA.

We reversed. In reaching our conclusion that Memorial's state-law claim for negligent misrepresentation was not preempted, we initially made a distinction between hospitals who assert a derivative claim for benefits (i.e., the hospital stands in the shoes of the beneficiary of the plan) and independent, third-party claims brought by health care providers such as Memorial. 904 F.2d at 243-44. To determine on which side of the line Memorial fell, we looked to our prior cases in which we found ERISA preemption had

> two unifying characteristics: (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.

904 F.2d at 245 (footnotes omitted).[4] We concluded that Memorial

---

[4]We have since followed this two-part inquiry in ERISA cases. *See Hook v. Morrison Milling Co.,* 38 F.3d 776, 781 (5th Cir.1994); *Weaver v. Employers Underwriters, Inc.,* 13 F.3d 172, 176 (5th Cir.), *cert. denied,* 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994).

5

fit into neither category and was therefore asserting its state-law claim for misrepresentation as an independent, third-party provider of medical services.

We asserted three justifications for our conclusion. First, we recognized the "commercial realities" facing third-party providers of health care services, noting that in situations in which it is not clear whether a patient is covered by a health insurance plan, "the provider wants to know if payment reasonably can be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided." 904 F.2d at 246.

Second, when an insurance company erroneously informs a health care provider such as Memorial that a patient is covered by health insurance, state law, which "allocat[es] ... risks between commercial entities that conduct business in a state," normally provides a remedy. *Id.* at 246-47. This is so, we reasoned, because "[a] provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage." *Id.* at 246.

Third, depriving an independent third-party provider of a state-law cause of action in no way furthers, but rather defeats, Congress's purpose behind enacting ERISA. We recognized in *Memorial* that third-party providers would be less likely to accept the risk of nonpayment, and as a result, may require patients to make up-front payments or subject those patients to other

6

unnecessary inconveniences before treatment is offered.  *Id.* at 247.  Nor, we reasoned, could Congress have wanted to "shield welfare plan beneficiaries from the consequences of their acts toward non-ERISA health care providers when a cause of action ... would not relate to the terms or conditions of a welfare plan, nor affect—or affect only tangentially—the ongoing administration of the plan."  *Id.* at 250.

In short, in *Memorial,* we staked out the policy arguments which support the conclusion that ERISA does not preempt a third-party provider's state-law claims if that third party's claim is premised on a finding that the beneficiary is not covered at all by an existing ERISA plan.  As such, we defined what it meant for a third party's state-law claims to "relate to" an ERISA plan, premising our conclusion on the commercial realities faced by third-party providers, basic notions of federalism, and Congress's intent behind enacting ERISA.

II. POST-*MEMORIAL* TENSION IN OUR CASE LAW

After we decided *Memorial,* some lower courts within our Circuit encountered a tension in our cases between *Memorial* and *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988) (*Hermann I* ) and *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 959 F.2d 569 (5th Cir.1992) (*Hermann II* ).[5]  In *Hermann I* and

---

[5]*See Metroplex Infusion Care v. Lone Star Container,* 855 F.Supp. 897, 900-01 (N.D.Tex.1994);  *Oaks Psychiatric Hosp. v. American Heritage Life Ins. Co.,* 814 F.Supp. 553, 555 (W.D.Tex.1993);  *Forest Springs Hosp. v. Illinois New Car & Truck Dealers Ass'n Employees Ins. Trust,* 812 F.Supp. 729, 732-33 (S.D.Tex.1993);  *Brown Schs., Inc. v. Florida Power Corp.,* 806 F.Supp. 146, 150 (W.D.Tex.1992).

*Hermann II,* we held that a third-party provider's state-law claims *were* preempted by ERISA. It therefore became unclear whether our holding in *Memorial* applied to *all* third-party providers of medical services (contra to *Hermann I* and *Hermann II* ) or whether *Memorial* invited lower courts to conduct a fact-sensitive inquiry into whether the third-party provider, under the unique circumstances of each case, could properly be characterized as an independent, third-party provider or as an assignee asserting a derivative claim for ERISA benefits. Accordingly, we take this opportunity to clarify the scope of *Memorial* in light of *Hermann I* and *Hermann II* and conclude that the cases are consistent with another.

In *Hermann I,* 845 F.2d 1286, Hermann Hospital provided a patient medical services after Hermann was informed by MEBA (the insurance company) that the patient was covered by a health plan governed by ERISA. The patient, who had died, assigned her rights to the benefits of the health plan to Hermann. MEBA neither declined nor tendered payment, but told Hermann that the claim was being "investigated." Hermann then filed suit, alleging state-law causes of action for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud. Hermann did not assert violations of Texas's Insurance Code. We held that Hermann's claims were preempted by ERISA. *Id.* at 1290. An important element of our holding in *Hermann I* was our reading of the Supreme Court's decisions in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). These

8

cases, we reasoned, stood for the proposition that where a claim relates to an employee benefit plan governed by ERISA and are "based upon state law of general application *and not a law regulating insurance,*" that state-law cause of action is preempted by ERISA. *Hermann I,* 845 F.2d at 1290.

In *Hermann II,* 959 F.2d 569, we did nothing more than hold that our preemption determination in *Hermann I* was the law of the case in *Hermann II. Id.* at 578. Accordingly, *Hermann II* adds nothing to our understanding of ERISA preemption.

However, we did clarify the meaning of *Hermann I* in *Memorial.* In footnote 20, we distinguished *Hermann I* on the ground that "the hospital was aggrieved over a plan's delay in processing its claim and was seeking recovery of plan benefits allegedly owed to its assignor." 904 F.2d at 249 n. 20. We further suggested that *Hermann I* did not control the situation faced by Memorial Hospital because the claims in *Hermann I* were "dependent on, and derived from, the rights of the plan beneficiaries to recover benefits under the terms of the plan." *Id.* Stated differently, Hermann Hospital was not an independent, third-party provider of medical services, but rather more akin to a first-party beneficiary whose causes of action are normally preempted by ERISA.[6] Because *Hermann I* was decided before *Memorial, Hermann II* did not discuss ERISA preemption, and because we have never questioned the holding or analytical underpinnings of *Memorial,* our understanding of *Hermann*

---

[6]*See, e.g., Hogan v. Kraft Foods,* 969 F.2d 142, 144-45 (5th Cir.1992); *Ramirez v. Inter-Continental Hotels,* 890 F.2d 760, 763-64 (5th Cir.1989).

9

*I* as expressed in *Memorial* is the law of this Circuit.

As such, the difference between *Hermann I* and *Memorial* has nothing to do with the bare existence of an ERISA plan. Rather, the proper inquiry is whether the beneficiary under the ERISA plan was covered at all by the terms of the health care policy, because if the beneficiary was not, the provider of health services acts as an independent, third party subject to our holding in *Memorial.* This is no doubt what our district courts have understood *Memorial* to mean.[7]

III. APPLICATION OF *MEMORIAL* TO CYPRESS'S STATE-LAW CAUSE OF ACTION FOR MISREPRESENTATION

Pan-American and National argue that *Memorial* does not control this case because in its pleadings, Cypress admitted that it was

---

[7]*See Jefferson Parish Hosp. Dist. No. 2 v. Principal Health Care of La., Inc.,* 934 F.Supp. 206, 208 (E.D.La.1996) ("The patient's assignment of right in this action is irrelevant to the hospital's right to recover from the plan in its independent status as a hospital."); *Cornett v. Aetna Life Ins. Co.,* 933 F.Supp. 641, 644 (S.D.Tex.1995) ("A careful distinction was drawn [in *Memorial* ] between plan participants, on the one hand, and independent, third-party health providers, on the other...."); *Metroplex Infusion Care,* 855 F.Supp. at 901 ("The apparent contradiction between the *Hermann* cases and *Memorial* may be resolved in light of their underlying factual differences: whereas there was no ERISA coverage in *Memorial,* so that the hospital would have had no recourse under either ERISA or state law had its state law claims been preempted, in *Hermann* ERISA coverage did not exist but had allegedly been improperly denied."); *Forest Springs,* 812 F.Supp. at 732 ("The facts in *Hermann* differed from that of *Memorial* ... because the dispute in *Hermann* centered around an alleged misrepresentation as to the extent of coverage, not a situation where, like here and in *Memorial* ..., the defendant contends there is no coverage at all."); *Brown Schools,* 806 F.Supp. at 150 ("The apparent reason for the discrepancy between the cases is that in *Memorial* there was *no* ERISA coverage and therefore the hospital would have "no recourse under either ERISA or state law' if the hospital's state law claims were preempted ..., whereas in the *Hermann* cases, ERISA coverage existed but was allegedly improperly denied.").

inquiring about the extent rather than the existence of coverage for Schwartz.  In addition, Pan-American and National argue that because an ERISA plan was in place and Schwartz was enrolled in the plan, Cypress's state-law claim should be preempted by ERISA.

The defendants' position is unavailing because Schwartz, although enrolled in the plan, was not covered by the health care plan insured by Pan-American and National.  It is undisputed that National refused to pay Cypress because "coverage [was] rescinded as of [the] effective date."  Admittedly, because no discovery took place in this case, the record is unclear as to the meaning of this phrase.  Nor does the record reveal the precise reasons behind National's refusal to pay for Schwartz's services.  Nonetheless, Cypress has asserted, and the defendants do not dispute, that coverage was denied because Schwartz was not covered by the health plan.  Indeed, neither National, Pan-American, nor the record suggest that "coverage rescinded" means anything else than Schwartz was not covered by the plan at the time of his hospitalization.  As such, Cypress's cause of action does not relate to ERISA, but rather arises under state law.  *Memorial* is therefore triggered.  Cypress's state-law claim under § 21.21 for misrepresentation is not preempted by ERISA.

Finally, the district court's reasoning is of no help to the defendants.[8]  As we have pointed out, the district court concluded that for ERISA purposes, third-party providers such as Cypress are

---

[8]We note that the defendants do not rely on or attempt to justify the district court's reasoning in this case.

on no better footing than first-party beneficiaries. We rejected that premise in *Memorial,* where we reasoned as follows:

> We have held under different circumstances that ERISA preemption may occur even though ERISA itself could not offer an aggrieved employee a remedy for alleged misrepresentations. *That principle should not be extended, however, to encompass third-party providers, particularly when to do so would run counter to one of Congress's overriding purposes in enacting ERISA.*

904 F.2d at 248 (emphasis added) (footnote omitted). The district court's reasoning to the contrary is foreclosed by *Memorial.*

## CONCLUSION

Because the district court erroneously determined that Cypress's state-law cause of action for violating § 21.21 of Texas's Insurance Code was preempted by ERISA, we REVERSE the district court's decision. In addition, the district court's jurisdiction to hear this case was based on the federal question presented by ERISA preemption, and because we hold that ERISA is not implicated, we REMAND this case to the district court with directions to remand Cypress's § 21.21 claim to Texas state court.

REVERSED AND REMANDED.

12