**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-40995
_____

LETOURNEAU LIFELIKE ORTHOTICS & PROSTHETICS, INC., as assignee of
Pamela L. Nichols,

Plaintiff-Appellee,

versus

WAL-MART STORES, INC.; WAL-MART ASSOCIATES HEALTH & WELFARE PLAN;
COMMITTEE OF THE WAL-MART ASSOCIATES HEALTH & WELFARE PLAN,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

July 10, 2002

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellee LeTourneau Lifelike Orthotics & Prosthetics, Inc. ("LeTourneau") filed this action in district court against the captioned Defendants-Appellants, seeking $9,767 in payment for replacing part of a prosthetic device that LeTourneau had furnished to Pamela L. Nichols, a beneficiary of the defendant Wal-Mart Associates Health & Welfare Plan (the "Plan"). In addition to asserting that claim under Section 502 of ERISA,[1]

---

[1] 29 U.S.C. § 1132(a).

LeTourneau advanced the Texas common law claim of <u>quantum</u> <u>meruit</u>. The state law claim and all claims against defendant Wal-Mart Stores, Inc. were eventually dismissed on an agreed motion. Following a bench trial, the court entered judgment for LeTourneau against the Plan in the amount of its principal demand, plus prejudgment interest, attorney's fees, costs, and post-judgment interest. Concluding that LeTourneau lacked standing to bring this action, we reverse the district court's determination to the contrary, vacate the judgment for LeTourneau, and remand with instructions to dismiss the complaint.

## I. FACTS AND PROCEEDINGS

Nichols was a beneficiary of the Plan by virtue of her husband's participation. The Plan is governed by ERISA, sponsored by Wal-Mart Stores, Inc., and administered by an administrative committee. The Plan's Summary Plan Description ("SPD") contained the following anti-assignment clause:

ASSIGNMENT

Transferring to Another Party
Medical coverage benefits of this Plan may not be assigned, transferred or in any way made over to another party by a participant. Nothing contained in the written description of Wal-Mart medical coverage shall be construed to make the Plan or Wal-Mart Stores, Inc., liable to any third-party to whom a participant may be liable for medical care, treatment, or services.
....

Assignment Overview

> Except as permitted by the Plan or as required by state Medicaid law, no attempted assignments of benefits will be recognized by the Plan.[2]

When Nichols became a patient of LeTourneau in December 1996, she signed a form containing a direct payment authorization which permitted the Plan to pay LeTourneau directly for "all things to which" Nichols was "entitled" under the Plan. Nichols's physician had prescribed the above-knee leg prosthesis in question, which was covered by the Plan. She received the prosthesis from LeTourneau early in 1997. Based on the direct payment authorization in Nichols's entry form, the Plan paid $19,553 directly to LeTourneau for the device and the services related to fitting it.

About a year-and-a-half after Nichols received the original prosthesis, the same physician prescribed a new socket for it. LeTourneau contacted the Plan's agent, Blue Cross/Blue Shield, and confirmed that Nichols was still a beneficiary of the Plan; at that time, however, neither Nichols nor LeTourneau sought either prior approval for replacing the socket or verification of coverage of Nichols for this service. LeTourneau replaced the socket and submitted a claims form to Blue Cross/Blue Shield, seeking payment of $9,767.

---

[2] The Plan did not, in contrast, prohibit participants or beneficiaries from authorizing the Plan to make direct prepayments to health care benefit providers, like LeTourneau, for covered services.

3

Sometime later, LeTourneau was informed that the Plan would pay nothing at that time, adding that confirmation as to medical necessity was required regarding the new socket and other components. LeTourneau eventu2ally submitted a copy of the physician's prescription for the socket and a Certificate of Medical Necessity which was signed and dated by the doctor more than a year after the Plan had notified LeTourneau of its denial.

On the same day that the Certificate of Medical Necessity was signed by Nichols's doctor and delivered to the Plan, the Plan furnished LeTourneau an Explanation of Benefits and advised that the Plan was denying the new socket charges based on the following provision in the "Other Covered Expenses" section of the SPD:

> Standard prostheses limited to artificial limbs, artificial eyes, breast implants where the breast tissue is removed, or initial placement of contact lenses or glasses after cataract surgery; limited to once every three years. Replacement will be allowed when the original prosthesis was medically necessary and only when a change of prescription occurs. NOTE: The Plan must be given prior approval of your prosthesis supplier.

Without further efforts to explore administrative reconsideration, LeTourneau brought the instant action as Nichols's assignee. The Plan contested LeTourneau's standing because (1) Nichols's direct payment authorization was not the equivalent of an assignment of benefits, and (2) even if it were, it would be invalid for purposes of LeTourneau's pursuing an ERISA Section 502 claim, given the SPD's anti-assignment clause. After denying the

4

Plan's motion for summary judgment, the district court conducted a bench trial. Implicitly rejecting the challenge to standing, the court accepted LeTourneau's contentions that Nichols's direct payment authorization was an assignment of benefits and, relying on our decision in <u>Hermann Hospital v. MEBA Medical & Benefits Plan</u> (<u>Hermann II</u>),[3] held that an employee benefits plan cannot enforce an anti-assignment clause against a provider of medical services. The court rendered judgment in favor of LeTourneau and the Plan timely filed a notice of appeal.

## II. ANALYSIS

A. <u>Standard of Review</u>

On appeal from a bench trial, we review the factual findings of the trial court for clear error.[4] We review conclusions of law <u>de novo</u>, including the trial court's determination of its own standard of review of an ERISA administrator's determination of eligibility for benefits.[5]

B. <u>LeTourneau's Standing</u>

---

[3] 959 F.2d 569 (5th Cir. 1992).

[4] <u>Kona Tech. Crop. v. S. Pac. Transp. Co.</u>, 225 F.3d 595, 601 (5th Cir. 2000).

[5] <u>Id.</u>; <u>Meditrust Fin. Servs. Corp. v. The Sterling Chems., Inc.</u>, 168 F.3d 211, 213 (5th Cir. 1999).

Standing is jurisdictional.[6] LeTourneau has no direct claim against the Plan; and, absent a valid assignment of benefits from Nichols, LeTourneau would have no derivative standing to sue the Plan under ERISA Section 502.[7] In finding the presence of a valid assignment and rejecting the Plan's anti-assignment assertion, the district court relied entirely on Hermann II, in which the ERISA plan at issue contained the following anti-assignment clause:

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.[8]

Although we held for the hospital, we did so primarily on the basis of estoppel: The ERISA Plan was estopped from enforcing its anti-assignment clause because of the Plan's protracted failure to assert anti-assignment when the hospital requested payment under an assignment of payment provision for covered benefits.

Here, however, the district court did not rely on estoppel. Rather, it relied on our alternative holding in Hermann II that the anti-assignment clause was ineffectual against the hospital. In that alternative holding, we concluded that the anti-assignment

---

[6] Florida Dept. of Ins. v. Chase Bank of Texas, 274 F.3d 924, 928-29 (5th Cir. 2001) (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475-76 (1982)).

[7] See generally Hermann II, 959 F.2d at 572.

[8] Hermann II, 959 F.2d at 574.

6

clause there at issue would not preclude the hospital's recovery from the plan because <u>the clause applied only to unrelated, third-party assignees</u>, such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with a plan or its benefits, or even involuntary alienation such as attempts to garnish such payments.

The district court's reliance on <u>Hermann II</u>'s alternative holding, which analogized that anti-assignment clause to anti-assignment clauses commonly found in spendthrift trusts, is misplaced. There simply is no similarity between the language of the Plan's anti-assignment clause and the wording of the clause that we analyzed in <u>Hermann II</u>. In no way resembling typical spendthrift trust provisions or the third-party creditor anti-assignment clause provision in <u>Hermann II</u>, the Plan's anti-assignment clause states that "no attempt at assignments or benefits will be recognized by the Plan" and, most significantly, that "[n]othing contained in the written description of Wal-Mart medical coverage shall be construed to make the Plan or Wal-Mart Stores, Inc., liable to any third-party to whom a participant may be liable for medical care, treatment, or services." This language is unquestionably directed at providers of health care services such as LeTourneau in precisely the way that the anti-assignment language <u>Hermann II</u> was not.

We have previously stated that "we must ... interpret ERISA plans' provisions as they are likely to be 'understood by the

average plan participant,' consistent with ERISA's statutory drafting requirements."[9]  When, as in the instant case, the plan administrator is vested with discretion to review plan terms and decide claims for benefits, we review the administrator's interpretation of an SPD's terms only for abuse of discretion.[10] In Hermann I[11] we held that "ERISA allows the assignment of health care benefits" but noted that the validity of the assignment depends on a construction of the plan at issue.[12]  Neither Hermann I nor Hermann II stands for the proposition that all anti-assignment clauses are per se invalid vis-à-vis providers of health care services.  Furthermore, neither Hermann opinion mandates that any putative assignment somehow grants derivative standing to the provider, as an assignee, to sue on behalf or standing in the shoes

---

[9]  Walker v. Wal-Mart Stores, Inc., 159 F.3d 938, 940 (5th Cir. 1998) (per curiam)(quoting 29 U.S.C. § 1022(a)(1)); see also Fallo v. Piccadilly Cafeterias, Inc., 141 F.3d 580, 583 (5th Cir. 1998) ("ERISA requires plan administrators to provide its participants with an accurate, comprehensive, and easy to understand summary of the Plan."); id. at 583 n.14 ("'The summary plan description ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'" (quoting 29 U.S.C. § 1022(a)(1))).

[10]  See McCall v. Burlington Northern/Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000), cert. denied, 122 S. Ct. 57 (2001).

[11]  Hermann Hospital v. MEBA Medical & Benefits Plan, 845 F.2d 1286 (5th Cir. 1988).

[12]  Id. at 1289, 1290.

of the plan's beneficiary.  On the contrary, our case law affirms "the well-settled principle that Congress did not intend that ERISA circumscribe employers' control over the content of benefit plans they offered to their employees" as well as "Congress's intent that employers remain free to create, modify and terminate the terms and conditions of employee benefits plans without governmental interference."[13]  We are aware of no statute or case law, and LeTourneau has invited our attention to none, that would preclude application of these principles to the anti-assignment clause here under consideration.  Applying universally recognized canons of contract interpretation to the plain wording of the instant anti-assignment clause leads inexorably to the conclusion that any purported assignment of benefits from Nichols to LeTourneau would be void.

This conclusion is underscored by the fact that the Plan dutifully paid LeTourneau for the original prosthesis, never attempting to deny responsibility by relying on the anti-assignment clause.  In other words, the Plan did not attempt to make its anti-assignment provisions trump the direct payment authorization that Nichols validly exercised; rather, the Plan fully honored it by paying LeTourneau in full for the original prosthesis.  The Plan's subsequent invoking of the anti-assignment clause to challenge LeTourneau's derivative standing to bring an ERISA section 502

---

[13]  McGann v. H & H Music Co., 946 F.2d 401, 407 (5th Cir. 1991), cert. denied, 506 U.S. 981 (1992).

claim for the replacement socket is consistent with the Plan's implicit acknowledgement that the contents of the entry form signed by Nichols, although ineffective to assign her other contractual or statutory rights under ERISA, did effectively assign to her health care services provider her right to receive payments for duly covered claims. Again, the anti-assignment provision in Hermann II is so distinguishable from the Plan's that our rejection of facially dissimilar distinctions in Hermann II are wholly inapposite here.

At oral argument, LeTourneau conceded —— as it had to —— that, prior to providing the new socket for Nichols's prosthesis, it never bothered to seek advance authorization through Blue Cross/Blue Shield or the Plan; neither did it attempt to verify that such a replacement, if made within less than three years following the initial installation of the prosthesis, would be covered. LeTourneau's decision to verify nothing other than that Nichols was still a beneficiary of the Plan nicely illustrates the distinctions that are at work here: The fact that a health care services provider verifies beneficiary status and has a direct payment authorization in hand is worth nothing when coverage of the service provided to the beneficiary has not been verified or pre-approved, and is ultimately determined in the discretion of the plan administrator not to be covered. Any right that Nichols herself might have enjoyed as a beneficiary to challenge Wal-Mart's denial of coverage and to claim entitlement to socket replacement

10

despite the passage of less than three years could not be assigned to any third party, including her provider of health care services; and without an assignment, the provider, LeTourneau, could have no standing to pursue coverage, either administratively or judicially. Regrettably for LeTourneau, by failing to verify coverage for Nichols's socket replacement in advance, it assumed the risk (as it candidly conceded in oral argument) that coverage might be denied by the Plan's administrator. Because of the anti-assignment provision of the Plan, LeTourneau had no derivative standing to assert coverage retrospectively as Nichols's assignee.

### III. CONCLUSION

The district court erred as a matter of law in holding the anti-assignment provision in the Plan's SPD ineffective as to LeTourneau. Because that clause is valid vis-à-vis LeTourneau, it renders nugatory any purported assignment of benefits from the beneficiary, Nichols. And, absent an enforceable assignment of benefits, LeTourneau had no standing to sue the Plan for Nichols's benefits under ERISA Section 502. Therefore, we must reverse the court's ruling on the inapplicability of the Plan's anti-assignment clause to LeTourneau and vacate the court's judgment in favor of LeTourneau. Consequently, we need not and therefore do not consider whether the district court erred when it determined that (1) Nichols's direct payment authorization was an assignment, (2) the Plan improperly denied payment in reliance on the "Other

11

Covered Expenses" provision of the SPD, (3) it need not refer the claim to the plan administrator once it determined that the anti-assignment clause did not apply to LeTourneau, (4) the standard of review to employ in analyzing the Plan's interpretation of and reliance on the "once every three years" limitation to deny coverage for replacing Nichols's knee socket, or (5) the Plan did indeed afford coverage for replacement of the socket, irrespective of timing.

Because LeTourneau had neither direct nor derivative standing to bring this suit, the district court lacked jurisdiction to hear it. We therefore reverse the court, vacate its judgment in favor of LeTourneau, and remand this case with instructions to dismiss it at LeTourneau's cost.

REVERSED, JUDGMENT VACATED, AND CASE REMANDED with instructions to dismiss at plaintiff's cost.