**PAPE EQUIPMENT COMPANY, and
Timmins Equipment Company,
Appellants,**

v.

**I.C.S., INC., Appellee.**

**No. C14–85–939–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 13, 1987.

Rehearing Denied Sept. 10, 1987.

Charles B. Kirklin, H. Victor Thomas, Warren W. Boone, Houston, for appellants.

Wade B. Williams, Galveston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Appellants Pape Equipment Company and Timmins Equipment Company appeal a judgment awarding appellee, I.C.S., Inc., actual damages of $388,793.60 that were trebled under the 1977 Deceptive Trade Practices Act (D.T.P.A.) plus prejudgment interest for a total amount of $1,498,288.10.

The critical appellate issue in this case is whether the appellee I.C.S. proved that it had been assigned Dow Chemical Company's cause of action against the appellants. In their first point of error appellants argue that appellee failed to prove such an assignment, without which it has no right of recovery. In four other points of error

appellants allege factual and legal insufficiency of the evidence to support certain jury findings and deemed findings by the trial court. We sustain appellants' first point of error, reverse the judgment of the trial court, and render judgment that appellee take nothing.

A brief review of the chronological and procedural history of this case reflects that in 1979, appellee, I.C.S., Inc., leased a crane and an operator from appellant, Pape Equipment Company. While lifting some tanks, the crane overturned and destroyed a pipe rack and a powerline. Because the powerline was destroyed, power to a Dow Chemical Company (Dow) plant was interrupted and the company lost a substantial quantity of chlorine production. The crane operator alleged that his supervisor who worked for I.C.S., Inc. ordered him to make an unsafe lift and he sued I.C.S., Inc. for damages for personal injuries that he received during the accident. I.C.S., Inc. denied liability and counterclaimed against appellants Pape Equipment Company and Timmins Equipment Company. At trial, the crane operator dropped his cause of action against I.C.S., Inc., and the jury was presented with the action by appellee I.C.S., Inc. against appellants. The jury found in favor of I.C.S. in six special issues and the parties apparently stipulated damages in the amount of $388,793.60. The court entered a judgment in favor of I.C.S. for that amount and automatically trebled the damages pursuant to the 1977 version of the Deceptive Trade Practices Act (DTPA).

In their first and dispositive point of error, appellants argues that I.C.S. could not recover against them because it failed to prove that it had been assigned Dow's cause of action. In its pleadings, I.C.S. alleged that it had been assigned Dow's claim for damages in the amount of $600,-000.00 and as proof of such assignment it introduced an undated agreement executed by Dow, Employers Casualty Company, Houston General Insurance Company, and I.C.S., Inc. In keeping with its assignment allegations, the only evidence introduced at trial by I.C.S. concerning damages was that of expert witnesses who testified only as to damages sustained by Dow. As a result of this testimony the parties apparently stipulated to damages of $388,793.60, the exact amount specified by one of the expert witnesses. In order for I.C.S. to recover these damages, Dow must have assigned its cause of action to I.C.S. Appellants assert that because the only damages proved were Dow's, I.C.S. could not recover damages on its own behalf for any potential cause of action it may have had against appellants. The critical issue then is whether there is sufficient proof that Dow assigned its cause of action to I.C.S. We will examine that issue as well as alternate theories of recovery advanced by I.C.S.

■■■ An assignment is a manifestation by the owner of a right of his intention to transfer such right to the assignee. *Hermann Hospital v. Liberty Life Assurance Co.*, 696 S.W.2d 37, 44 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (opinion on motion for rehearing); *Highland Park State Bank v. Salazar*, 555 S.W.2d 484, 487 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). To recover on an assigned cause of action, one must plead and prove that a cause of action capable of being assigned *existed and was assigned* to the party alleging the theory of assignment. *Esco Elevators, Inc. v. Brown Rental Equipment Co., Inc.*, 670 S.W.2d 761, 764 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

As evidence of Dow's assignment to it, I.C.S. introduced at trial the undated agreement between I.C.S., Inc., Dow Chemical Company, Houston General Insurance Company, and Employers Casualty Company. Because of the significant reliance placed on this agreement, we are including its complete terms.

Receipt is hereby acknowledged by the undersigned, The Dow Chemical Company, of a loan from Employers Casualty Company in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) and from Houston General Insurance Company in the amount of seventy-five thousand ($75,000.00) for a total of Three Hundred Twenty-Five Thousand Dollars

($325,000.00) for and on behalf of I.C.S., Inc. under the following conditions:

(1) These loans are repayable only out of the proceeds of any recovery which the undersigned, The Dow Chemical Company, may make by reason of an accident and losses sustained by the undersigned, The Dow Chemical Company, in Brazoria County, Texas, on or about the 3rd day of July, 1979; in the event the undersigned, The Dow Chemical Company, does recover any sum or sums against Pape Equipment Company, its officers or employees or any other person or entity, arising out of said accident, then and in that event, the first dollars of said recovery shall be retained by The Dow Chemical Company up to a maximum of Sixty-Three Thousand Seven Hundred Ninety Three and 60/100 Dollars ($63,793.60) together with interest on said retention at the rate of nine percent (9%) per annum from and after the date of judgment in favor of The Dow Chemical Company, and any recovery in excess of said $63,-793.60 and said interest shall next be paid over to Houston General Insurance Company by The Dow Chemical not to exceed its loan of Seventy-five Thousand Dollars ($75,000.00) together with interest upon said $75,000.00 loan at the rate of nine percent (9%) per annum from and after the execution of this agreement, plus any expenses of said Houston General Insurance Company arising out of or in connection with said accident, and any recovery in excess of the sum of the amounts to be retained by The Dow Chemical Company and to be repaid to Houston General Insurance Company herein shall next be paid over to Employers Casualty Company by the Dow Chemical Company not to exceed its loan of $250,000.00 together with interest upon said $250,000.00 loan at the rate of nine percent (9%) per annum from and after the execution of this agreement plus any expenses of said Employers Casualty Company arising out of or in connection with said accident; in the event no recovery is made, then and in that event, the undersigned, The Dow Chemical Company, shall not be required to repay said loans; in the event more than Three Hundred Eighty-Eight Thousand, Seven Hundred Ninety-Three and 60/100 Dollars ($388,793.60) plus interest and expenses, including attorney's fees, an herein provided, is recovered, the same shall be retained by the undersigned The Dow Chemical Company.

(2) In consideration of said loans, we, The Dow Chemical Company, further authorize, constitute and appoint Employers Casualty Company, its agents and attorneys as may be designated by it, our true and lawful attorney for us and in our name, place and stead at its own cost to bring suit upon any cause of action The Dow Chemical Company may have or may be arising out of said accident and to do any and all other things that may be necessary to collect said cause of action and any and all proceedings as may be necessary or advisable and to prosecute said claim in its behalf, provided, however, that any recovery made in any such proceedings shall be distributed as provided in Paragraph (1) hereof and provided, further, that said Employers Casualty Company, its agents and attorneys, are hereby fully authorized to execute as The Dow Chemical Company's agent and attorney in fact any and all other documents, papers, releases and other instruments as may be required to either prosecute or settle said cause of action. It is further mutually agreed by The Dow Chemical Company, Employers Casualty Company and Houston General Insurance Company that all three of said entities must concur in any settlement of The Dow Chemical company's cause of action, and in the absence of such concurrence in a settlement of such cause of action by any one of these three entities, Employers Casualty Company is authorized to proceed to actual trial of such cause of action.

(3) For the same consideration, the undersigned, The Dow Chemical Company, further agrees and covenants not to sue, claim or make claims or institute any action or proceeding directly or indirectly against I.C.S., Inc. (Employers Casualty Company's and Houston General Insur-

ance Company's assured) to recover damages of any kind or character, known or unknown, received in or resulting from or as may hereafter result from an accident which occurred at or near The Dow Chemical Plant in Brazoria County, Texas on or about the 3rd of July, 1979, and the undersigned, The Dow Chemical Company, further covenants, agrees, binds and obligates itself to forever indemnify I.C.S., Inc., from any liability on any cross-action, third party action or any claims or causes of action seeking contribution and/or indemnity that may be hereafter asserted against I.C.S., Inc., as a result of said accident by any third party or parties for liability only as to The Dow Chemical Company's property damage for which these loans are made. (4) It is understood and agreed that this instrument is, and is intended to constitute, a full complete and final agreement; the undersigned, The Dow Chemical Company, hereby covenants and agrees that it will not seek to or recover from I.C.S., Inc., any further sum of money for any and all loss, damage or injuries sustained as a result of the abovereferred to accident.

We do not agree with appellee's contention that this agreement assigns to it Dow's cause of action. After a careful reading of the agreement, we find no words of assignment from Dow to I.C.S. Rather we perceive this to be a type of loan receipt agreement grounded on certain conditions. The loans acknowledged by the agreement are from Employers Casualty Company (Employers) and Houston General Insurance Company (Houston General) to Dow Chemical Company in the total amount of $325,000.00. These loans were reflected to be "for and on behalf of I.C.S., Inc." As consideration for the loans, Dow (1) appointed Employer's Casualty Company, its agents and attorneys, as Dow's attorneys to bring suit in Dow's name, place, and stead on any cause of action Dow had from the accident; (2) agreed that any recovery Dow obtained against Pape Equipment Company in excess of $63,793.60 plus interest would be used to repay the loans plus interest and expenses up to the total

amount of $388,793.60; and (3) covenanted not to sue or make any claims against I.C.S., Inc. The agreement is void of any words of transfer so essential to an assignment. Another factor working against the assignment theory of I.C.S., is the retention by Dow of some control over the settlement process. In paragraph two the agreement provides that "all three of said entities must concur in any settlement of The Dow Chemical Company's cause of action." It is significant to note that I.C.S. is not included in that settlement provision and that the cause of action is specifically referred to as belonging to Dow. These words are contrary to any suggestion of an assignment of Dow's claim to I.C.S. We find the agreement does not constitute an assignment by Dow to I.C.S. of Dow's cause of action against appellants.

As another theory of assignment, I.C.S. argues that Dow's cause of action was assigned to it as an agent of Employer's Casualty Company. The thrust of this argument is grounded on a provision in the "loan receipt agreement" and the testimony of the I.C.S. president and that of its attorney at trial. The agreement provides that Employer's Casualty Company, its agents and attorneys as may be designated by it, are appointed as Dow's attorneys to bring suit on Dow's cause of action in Dow's name, place, and stead. At trial during a hearing on a bill of exceptions, counsel for I.C.S., in response to a question from the trial judge, stated that he was hired and paid by Employers Casualty Company. Additionally, the president of I.C.S., also an attorney, testified over objection that in his opinion the "loan receipt agreement" assigned Dow's cause of action to I.C.S. as an agent and representative. Further he testified that I.C.S. had a right to bring this suit on behalf of Dow. From this evidence, coupled with the evidence that Employers Casualty Company is an insurer for I.C.S., the conclusion is asserted that I.C.S. is an agent for Employers Casualty Company, and, therefore, was entitled to bring this cause of action on behalf of Dow Chemical Company. We disagree.

While there is some question as to whether the "agreement" constitutes an express assignment to Employers Casualty Company, there is no question as to Employers' right to bring the lawsuit on behalf of Dow either directly or through an agent. However, there is nothing in the agreement reflecting that I.C.S. is assigned Dow's cause of action either directly or as an agent of Employers. Neither is there any evidence in the record to reflect an agency agreement between Employers and I.C.S. authorizing the latter to bring suit on Dow's cause of action. The fact that the attorney for I.C.S. was hired and paid by Employers is not sufficient to confer an agency status on I.C.S. to act on behalf of Employers as to Dow's cause of action. Further, the testimony of the president of I.C.S. as to his opinion of the meaning of the "loan receipt agreement" is not admissible over objection to alter the terms of the written agreement unless the agreement is ambiguous. *See Remington Rand, Inc. v. Sugarland Industries*, 137 Tex. 409, 153 S.W.2d 477 (1941); *United States Fire Insurance v. Warden*, 471 S.W.2d 425, 427 (Tex.Civ.App.—Eastland 1971, writ ref'd n.r.e.). There is no finding by the trial court of ambiguity in the written agreement. Nor do we find it ambiguous. It is clear as to its terms and we find nothing therein, by inference or otherwise, providing an agency status for I.C.S. to act on behalf of Employers or Dow. We find no credible evidence in the record sufficient to support a deemed finding by the trial court that I.C.S. was an agent of Employers authorized to bring suit on behalf of Dow.

Nor do we find merit in appellee's contention that the agreement is an equitable assignment of Dow's cause of action. To be an equitable assignment, the agreement must evidence an intent to transfer the interest and the transferor must relinquish control over the interest. *Central National Bank v. Latham & Company*, 22 S.W.2d 765, 767 (Tex.Civ. App.—Waco 1929, writ ref'd). An equitable assignment can be effected only by a surrender of control over the funds or property assigned. *Cooper v. Cocke*, 145 S.W.2d 275, 279 (Tex.Civ.App.—Amarillo 1940, no writ); *Davis & Goggin v. State National Bank of El Paso*, 156 S.W. 321, 327 (Tex.Civ.App.—El Paso 1913, writ ref'd). To make an equitable assignment, an equitably constructive appropriation of the subject matter should be made so as to confer a complete and present right in the party for whose benefit the assignment is meant, even where the circumstances do not admit of its immediate exercise. *Colleps v. George W. Smith Lumber Co.*, 185 S.W. 1043, 1047 (Tex.Civ.App.—Beaumont 1916, writ dism'd).

Here, Dow Chemical Company did not completely surrender its right to control the settlement of its cause of action even to Employers Casualty Company. The agreement is void of any provision evidencing any intent by Dow to relinquish its cause of action against appellants to appellee I.C.S. As mentioned, the agreement does provide that Employers Casualty Company, its agents, or attorneys, may bring the cause of action in Dow Chemical Company's name, place, and stead; however, there is nothing in the agreement on which to base an inference of an agency relationship between Employers Casualty Company and I.C.S. or an assignment to I.C.S. Under these circumstances, it is doubtful Dow Chemical Company could be legally bound by any judgment that appellee I.C.S., Inc. might obtain in reliance on the agreement. Because appellee specifically relied on an agreement in which Dow retained significant control over its own cause of action, we can not find that an equitable assignment has occurred.

Additionally, appellee argues that it is entitled to recover the judgment under the theory of subrogation. Although I.C.S. did not raise this theory of recovery until after oral submission we will nonethless address it on appeal. *See Leinert v. Sabine National Bank*, 541 S.W.2d 872 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). On review we find that I.C.S. waived this theory by failing to plead it below. There is no question that the doctrine of subrogation may sometimes be in-

voked to allow one party to assert rights of another party when there is no express assignment of the right. *Monk v. Dallas Brake & Clutch Service Co.*, 697 S.W.2d 780, 782 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). However, subrogation must be pled by the party claiming the right to subrogation. *Id.* I.C.S. neither pled this theory in its petition nor did it make any attempt to raise it by trial amendment. I.C.S. now asserts that it was tried by implied consent. We cannot agree with this conclusion. The doctrine of implied consent to trial of such legal theories is invoked only when issues have been fully developed. *Harrison v. City of San Antonio*, 695 S.W.2d 271, 277 (Tex.App.—San Antonio 1985, no writ). Here, appellee failed to fully develop the issue of subrogation. Introduction of apparently related evidence alone on an unpleaded issue does not mean parties consented to a trial of the unpleaded issues. *Jay Fikes and Associates v. Walton*, 578 S.W.2d 885, 889 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Further, the evidence I.C.S. relied on to support this theory also supports its pleaded theory of assignment. There can be no trial by consent of issues not pled, when the evidence alleged supporting the trial by implied consent was relevant to other issues that were raised by the pleadings. *Harrison*, 695 S.W.2d at 278.

■ Even if I.C.S. had not waived this theory of subrogation, we find a critical element of proof is missing. Subrogation is applicable where the potential subrogee has paid in full the debt or claim of the creditor. *See Providential v. Sims*, 441 S.W.2d 516, 519 (Tex.1969). There is no evidence that I.C.S. has paid Dow any sum which would entitle it to be subrogated to Dow's cause of action against appellants. Apparently I.C.S. is claiming subrogation by virtue of the loans made to Dow by its insurers, Employers Casualty Company and Houston General Insurance Company, under the agreement. While Employers and Houston General may be subrogated by virtue of their loans to Dow this does not confer a right of subrogation on I.C.S. for such payments. There is no credible evidence in this record to show that I.C.S.

either paid Dow's damages in full or was assigned the insurers' rights of subrogation, if any.

I.C.S. advances another theory by which they are entitled to recover the damages awarded in this case. It contends that recovery is warranted on I.C.S.'s own cause of action independent of any claim on the part of Dow. This theory is anchored on the apparent stipulation by the parties as to the damages sustained and found in the judgment by the trial court. The "stipulation" referred to by I.C.S. is entitled "Special Issue No. 6" and reads as follows:

"What sum of money, if any, do [you] find would compensate I.C.S., Inc. and/or Dow Chemical Company for damages sustained as a result of the incident in question? (Please answer in dollars and cents)".

Answer: $388,793.60

At the bottom of this form appears to be the signatures of the attorneys involved in the case. There are no words of stipulation contained on the form. Nor do we find anything in the record to show that a stipulation was specifically entered into by the parties. However, inasmuch as both parties have treated the item as a stipulation on appeal and the court entered judgment in that specific amount, we presume that it was so agreed. In support of its theory of independent recovery, I.C.S. asks us to consider this stipulation as the basis for judgment in its favor, separate from any recovery on Dow's cause of action. It suggests that the pleadings support such an independent recovery. We disagree.

■ A stipulation as to damages that refers to alternate parties as does this one, cannot alone support a judgment for one of them unless the cause of action for damages for that party is supported by the pleadings or tried by consent. An examination of the pleadings reflects that they are grounded on Dow's cause of action for damages notwithstanding I.C.S.'s contention to the contrary on appeal. Obviously, in view of appellant's Motion for Directed Verdict, there was no trial by consent of the issue as to I.C.S.'s independent right to

recover the damages. I.C.S. refers us to a general pleading concerning damages to support its theory of an independent right to recover. The pleading states:

Cross-Defendant would show that each of the foregoing acts and omissions constituted negligence, and that one, more than one, or all of such acts or omissions in various combinations thereof were a proximate cause of the accident in question resulting in damages of $600,000.00.

However, a further review of these pleadings reflects the following specific pleadings as to the basis of the cause of action for the damages:

As a result of the unfitness of the rig and crane, Cross-Plaintiff has been assigned the Dow Chemical Company's claim for damages in an amount of Six Hundred Thousand Dollars ($600,000.00).

Further support for the theory that the damages were those sustained by Dow is reflected in the general prayer for relief which alleges only $600,000.00 as damages. The pleading lends itself, in our view, to only one overall interpretation—that it is based on Dow's cause of action for damages and the alleged assignment of that cause to I.C.S. This interpretation is in keeping with the evidence introduced. All of the evidence was directed toward proving an assignment by Dow and the existence of damages sustained by Dow. The only testimony as to damages concerned those sustained by Dow. Indeed, the exact amount of Dow's damages as testified to by the expert witness was the same amount set out in the stipulation and the judgment. However, I.C.S. contends that in considering the judgment we should ignore all of the contrary evidence and consider only that which is favorable to the judgment on behalf of an independent recovery by I.C.S. Under this theory, only the stipulation would be considered. I.C.S. places the expert testimony as to Dow's damages in the category of evidence to be ignored under this theory. I.C.S. concludes that we should then affirm the judgment under any reasonable theory of applicable law. Although we agree with the general principle expressed by I.C.S., we do not

agree with the application suggested under the facts of this case. We do not perceive the expert opinion evidence to be contrary to the judgment, rather we find it to be consistent with the stipulation and the pleadings which were grounded on an alleged assignment from Dow. The only reasonable basis for the stipulation under the facts of this case is that it reflects the evidence presented and the only theory pled. In any event, a stipulation as to facts such as the damages here cannot, standing alone, suffice to state an independent cause of action where the pleadings and other proof failed to do so. The stipulation resolves the amount of damages proved. It does not resolve the contested issue of who has standing to sue and is entitled to the damages proved. *See Binz v. Harwood,* 297 S.W.2d 210, 213 (Tex.Civ.App.—Fort Worth 1956, writ ref'd).

Finally, I.C.S., in yet another approach, urges that even if the agreement introduced is not an express or an equitable assignment, appellants waived their right to object because they failed to contest appellee's standing to sue by a verified plea in abatement. I.C.S. mischaracterizes appellants' challenge. Appellants' challenge is to I.C.S.'s standing to sue and recover on Dow Chemical Company's cause of action, not on their capacity to sue. Appellants were not required to file a plea in abatement because appellee could not cure its lack of standing to sue by amending its pleadings. *Develo-Cepts, Inc., v. City of Galveston,* 668 S.W.2d 790, 793 (Tex.App. —Houston [14th Dist.] 1984, no writ). Its problem was a lack of proof. Appellants timely and properly challenged I.C.S. on the issue of standing to sue by filing its Motion for Directed Verdict. Appellants' first point of error is sustained.

Because of our disposition of point of error number one, we do not need to address appellants' other points of error. The judgment of the trial court is reversed and judgment is rendered that appellees I.C.S., Inc. take nothing.