**Reversed and Remanded and Majority and Dissenting Opinions filed January 29, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00768-CV

---

**RICHARD G. ORTEGA, Appellant**

**V.**

**CACH, LLC, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 978366**

---

## DISSENTING OPINION

This is an appeal from a judgment in a debt-collection suit in favor of a financial institution, appellee CACH, LLC, that claims to be the assignee of an

unpaid consumer account. The consumer, appellant Richard G. Ortega, challenges the trial court's judgment, asserting insufficiency of the evidence and error in the trial court's admission of three affidavits.

The proof offered to support CACH's claim is wanting in many respects. The majority concludes that the trial court's judgment should be reversed and the case remanded for a new trial based on the erroneous admission of hearsay evidence. But there is no need to reach this issue because the proffered proof, which consists largely of conclusory statements, is legally insufficient to establish the assignment of the account to CACH. Consequently, the evidence is legally insufficient to support the trial court's judgment in favor of CACH, warranting reversal and rendition of a take-nothing judgment in favor of Ortega.

Plaintiff's Exhibit 1 purports to be a business records affidavit and is signed by Magic West of CACH (hereinafter "Exhibit 1"). At issue are three affidavits that, along with other documents, are attached to Exhibit 1: a second affidavit of Magic West (the "West Affidavit"), Debra Pellicciaro's affidavit (the "Pellicciaro Affidavit"), and Elisabeth Plummer's affidavit (the "Plummer Affidavit"). The trial court admitted Exhibit 1 (in its entirety) into evidence over Ortega's objections.

As reflected in the West Affidavit, West states that she is an authorized agent for and a custodian of records of CACH. The West Affidavit includes the following statements in pertinent part:

- "As authorized agent and custodian of the business records for [CACH], I have personal knowledge based upon the review of the documentation provided by the original creditor (attached hereto) that, after all just and lawful offsets, payments, and

2

credits have been allowed, the total balance on the account of $13,741.73 is just and true and is due and owing from [Ortega] to [CACH]."

- "Demand for payment of the just amount owing [CACH] by [Ortega] was made upon [Ortega] more than thirty (30) days prior to filing of [CACH's] original petition, and payment for the just amount owing has not been tendered."

In the Pellicciaro Affidavit, Pellicciaro states that she is employed by Bank of America, NA and states "[t]hat as a result of the sale of said accounts, CACH and/or its authorized agent, has complete authority to settle, adjust, compromise, and satisfy the account and that Bank of America has no further interest in this account for any purpose."

As reflected in the Plummer Affidavit, Plummer is employed as a bank officer by Bank of America, NA, successor in interest to MBNA Bank, NA. The Plummer Affidavit includes the following statements in pertinent part:

- That there is due and payable from Richard G. Ortega as of August 18, 2009, "the sum of $13,741.73 withstanding [sic] legally chargeable post charge-off interest, pursuant to the terms of the card member agreement with Bank of America."

- "That said agreement and account was, on 8/18/2009 sold, transferred, and set over unto CACH, LLC, with full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim."

- "That as a result of the sale of said account, CACH, LLC, and/or its authorized agent, has complete authority to settle, adjust, compromise, and satisfy same that Bank of America had no further interest in this account for any purpose."

3

## THE INSUFFICIENCY OF THE EVIDENCE AS TO ASSIGNMENT OF THE ACCOUNT

Ortega asserts in his second issue that the trial court erred in granting judgment in favor of CACH because any evidence that the account was assigned to CACH is legally insufficient. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the only judge to give weight to the testimony. *See id.* at 819.

The trial court granted judgment in favor of CACH based upon its breach-of-contract claim regarding the credit-card account that allegedly was assigned to CACH. As the party seeking to recover on a debt allegedly assigned to it, CACH had the burden to prove that the debt in question, in fact, was assigned to CACH. *See Delaney v. Davis*, 81 S.W.3d 445, 448–49 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 399 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). There was no oral testimony at trial regarding the assignment issue. The only evidence that arguably would raise a fact issue regarding assignment is Exhibit 1.[1] This exhibit does not contain any assignment or bill of sale or other

---

[1] Although Ortega raises numerous evidentiary challenges regarding the admissibility of this exhibit, in a legal-sufficiency review, we consider all evidence including evidence that was improperly admitted. *See Approx. $14,980 v. State,* 261 S.W.3d 182, 190 n.6 (Tex.App.—Houston [14th Dist.] 2008, no pet.).

instrument purporting to assign any debt or account to CACH. Other than the two affidavits executed by West, this exhibit does not contain any document generated by an employee of CACH. The purported business-records affidavit executed by West does not speak to the assignment issue.

The West Affidavit states that West has personal knowledge based upon her review of the attached documents that "after all just and lawful offsets, payments, and credits have been allowed, the total balance on the account of $13,741.73 is just and true and is due and owing from [Ortega] to [CACH]." To the extent West states that the account was assigned to CACH, this is a purely conclusory statement that is not sufficient to support the trial court's judgment. *See B.Z.B., Inc. v. Clark*, No. 14-11-00056-CV, 2012 WL 353783, at *2–3 (Tex. App.—Houston [14th Dist.] Feb. 2, 2012, no pet.) (holding that conclusory statement in affidavit did not raise a genuine fact issue) (mem. op.); *Chea v. Poon*, No. 14-08-01134-CV, 2010 WL 4684711, at *6 (Tex. App.—Houston [14th Dist.] Nov. 18, 2010, pet. denied) (holding that conclusory statements in affidavits did not raise a genuine fact issue) (mem. op.). In addition, West states that she gained her personal knowledge based upon the review of the documents from Bank of America that are contained in the Plaintiff's Exhibit 1. Thus, if these documents are legally insufficient to show that the account was assigned to CACH, any statement by West that these documents prove such an assignment would not allow a reasonable factfinder to find that such an assignment occurred. *See B.Z.B., Inc.*, 2012 WL 353783, at *2–3; *Chea*, 2010 WL 4684711, at *6.

In the Pellicciaro Affidavit, Pellicciaro states "[t]hat as a result of the sale of said accounts, CACH and/or its authorized agent, has complete authority to settle, adjust, compromise, and satisfy the account and that Bank of America has no

further interest in this account for any purpose." Pellicciaro does not indicate to which account or accounts she is referring when she uses the terms "said accounts" and "the account." Pellicciaro does not refer to Ortega or any Ortega account in any part of her affidavit. Pellicciaro does not state that Ortega's account was sold, transferred, or assigned to CACH. But, even if she had so testified, Pellicciaro does not state or show, or even suggest, how she would have personal knowledge in this regard. Therefore, any such statement would be legally insufficient. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (holding that an affidavit showing no basis for personal knowledge is legally insufficient).

In the Plummer Affidavit, Plummer states that, on August 18, 2009, the agreement and account in question were "sold, transferred, and set over unto CACH, LLC, with full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim." Although Plummer makes a general assertion that "the statements made in this Affidavit are based on the computerized and hard copy books and records of Bank of America," it is clear in Plummer's Affidavit that not all of the statements in the affidavit are taken from the bank's business records.[2] Plummer does not state that she has personal knowledge regarding the statements in her affidavit, that she has reviewed any Bank of America records, or that the statements in the affidavit are based upon her review of any Bank of America records. Presuming that it is reasonable to infer that her statements are based upon such a review, Plummer does not provide any facts as to why she concludes that Ortega's account was sold and transferred to CACH. Plummer does not say that Bank of America's records

---

[2] For example, in her affidavit, Plummer states that her affidavit "is to be treated as the original [contract] for all purposes" and that "if any originals are discovered, they will be submitted to the court for review." These statements could not be based upon Bank of America's business records.

contain a bill of sale or other assignment document in which Ortega's account is sold, transferred, or assigned to CACH. Plummer does not address whether these records contain a statement that this account was sold, transferred, or assigned to CACH. Nor does Plummer indicate whether she bases her conclusion on inferences she is making in reviewing the bank's records. Plummer does not state what, if anything, in Bank of America's records indicates that this account was sold, transferred, or assigned to CACH. Plummer does not state whether there is a particular code or notation in the bank's records indicating that the account was sold, transferred, or assigned to CACH. Plummer provides a conclusion, but no facts that might support this conclusion.

For example, Plummer might have reviewed a document in Bank of America's records that contained a list of accounts and a date next to each, with no mention of any sale, transfer, or assignment to CACH, and Plummer might have concluded based on this document that all accounts listed were sold and transferred to CACH on the respective dates listed. Or, the Bank's records might not contain any assignment documents or express indication that this account was assigned, but Plummer may be basing her conclusion on the fact that documents or entries regarding this account were maintained in a part of the bank's records in which documents or entries are placed regarding accounts assigned to CACH. If Plummer's conclusion is based on deductions such as these, or any other deductions, Plummer does not state the basis upon which she deduced her conclusion from what she observed in Bank of America's records.

In sum, Plummer does not testify that she was involved in any transaction regarding Ortega's account or that she has personal knowledge as to whether Ortega's account was sold, transferred, or assigned to CACH. Plummer does not

7

state that she reviewed Bank of America's records regarding Ortega's account, nor does she provide copies of any documents she may have reviewed. Even if Plummer conducted such a review, she does not state what she observed in these records, nor does she explain how what she observed leads her to conclude that Ortega's account was sold and transferred to CACH on August 18, 2009. It is possible that Plummer did not review any documents regarding Ortega's account and that she is basing her conclusion and statements on the fact that she was told by someone else that these statements are true and she believes that person. In any event, it is important that Plummer provide the factfinder with the facts underpinning her conclusion; otherwise, the factfinder has no evidence of any facts to evaluate in making a finding as to whether CACH proved that Ortega's account was assigned to CACH. If a witness provides a conclusion but does not provide underlying facts to support the conclusion, then the witness's testimony is conclusory and legally insufficient to support a judgment. *See CA Partners v. Spears*, 274 S.W.3d 51, 63 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Because Plummer failed to provide such facts, her statement is conclusory and legally insufficient to support the trial court's judgment. *See Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (holding affiant's statement that certain conduct constituted intentional or willful misconduct by defendant was conclusory because it stated a conclusion and did not provide supporting facts) (per curiam); *B.Z.B., Inc.*, 2012 WL 353783, at *2–3 (holding statement that, as a direct result of a party's breach of contract, claimants lost the right to contest an allegedly erroneous judgment, was conclusory because it stated a conclusion and did not provide supporting facts); *Chea*, 2010 WL 4684711, at *6 (holding statement that, if a defendant had performed under a contract, there would have been no foreclosure sale, was conclusory); *CA Partners*, 274 S.W.3d at 63 (holding

8

statement that the last payment on the note at issue received from the maker was for $111.50 received in May 2004, was conclusory because it stated a conclusion and did not provide supporting facts); *Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 544–45 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding statement regarding pipeline company's status with the Railroad Commission based upon "printout" from the Railroad Commisssion was conclusory because it stated a conclusion and did not provide supporting facts); *Estate of Gajewsky v. John Hancock Life Ins. Co.*, No. 14-04-00748-CV, 2005 WL 1017628, at *3 (Tex. App.—Houston [14th Dist.] May 3, 2005, no pet.) (holding statement that certain parties entered into a contract in connection with the issuance of certain insurance policies was conclusory).

Courts decline to accept such conclusory statements as proof because, without factual support, such statements are not susceptible to being readily controverted. *See Ryland Group*, 924 S.W.2d at 122. Plummer failed to explain the basis for the statements and failed to identify facts, much less link facts to the stated conclusions. Bare conclusions prove nothing. *See Ryland Group*, 924 S.W.2d at 122; *B.Z.B., Inc.*, 2012 WL 353783, at *2–3; *Chea*, 2010 WL 4684711, at *6; *CA Partners*, 274 S.W.3d at 63; *Southtex 66 Pipeline Co.*, 238 S.W.3d at 544–45; *Estate of Gajewsky*, 2005 WL 1017628, at *3.

The majority cites a case from this court, *Prudential Insurance Company of America v. Black*, 572 S.W.2d 379, 380 (Tex. App.—Houston [14th Dist.] 1978, no writ), for the proposition that Plummer could testify to the sale and assignment

9

of Ortega's account to CACH without providing documentary evidence.[3]  This proposition, while correct, does not address whether Plummer's affidavit testimony is conclusory.  Parties suing to collect on assigned accounts may prove the assignment by providing the assignment documents and related testimony.  Though providing copies of the assignment documents is not required, providing testimony of facts, rather than conclusions, to prove the assignment is required.  *See Ryland Group*, 924 S.W.2d at 122; *B.Z.B., Inc.*, 2012 WL 353783, at *2–3; *Chea*, 2010 WL 4684711, at *6.

The purpose of requiring proof of assignment is to protect a defendant against a subsequent action by a party actually entitled to recover on the account.  CACH is claiming to stand in the shoes of the original creditor and enforce an agreement against Ortega, but there is a fundamental failure of CACH's proof at a threshold level.  CACH did not show that it is the owner of the account or that it purchased the account.  A bare assertion is insufficient to prove assignment under Texas law.  CACH offered neither the assignment nor facts that would show assignment.  This is not a petty irregularity but a failure of proof that goes to the heart of CACH's claim.

Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the trial evidence would not enable reasonable and fair-minded people to find that the account and breach-of-contract claim in question were assigned to CACH.  *See Abrego v. Harvest Credit*

---

[3] The *Black* case involved the best evidence rule and did not involve any issue as to whether any testimony was conclusory. *See Prudential Insurance Company of America v. Black*, 572 S.W.2d 379, 380–81 (Tex. Civ. App.—Houston [14th Dist.] 1978, no writ).

*Management VII, LLC*, No. 13-09-00026-CV, 2010 WL 1718953, at *2–3 (Tex. App.—Corpus Christi Apr. 29, 2010, no pet.) (concluding that affidavit executed by employee of alleged assignee of credit-card account failed to establish that account was ever assigned, despite conclusory statements contained in affidavit) (mem. op.); *Unifund CCR Partners v. Laco*, No. 05-08-01575-CV, 2009 WL 4879348, at *4 (Tex. App.—Dallas Dec. 17, 2009, no pet.) (holding that evidence was insufficient to raise fact issue as to whether account was assigned to alleged assignee, even though evidence contained affidavit executed by employee of alleged assignee containing conclusory statements) (mem. op.); *CA Partners*, 274 S.W.3d at 63 (holding statement that the last payment on the note at issue received from the maker was for $111.50 received in May 2004, was conclusory and did not raise fact issue because it stated a conclusion and did not provide supporting facts); *Southtex 66 Pipeline Co.*, 238 S.W.3d at 544–45 (holding statement regarding pipeline company's status with the Railroad Commission based upon "printout" from the Railroad Commission was conclusory and did not raise fact issue because it stated a conclusion and did not provide supporting facts); *Skipper v. Chase Manhattan Bank USA, N.A.*, No. 09-05-0196-CV, 2006 WL 668581, at *1 (Tex. App.—Beaumont Mar. 16, 2006, no pet.) (holding that evidence was legally insufficient to show that account was assigned to plaintiff) (mem. op.); *Estate of Gajewsky*, 2005 WL 1017628, at *3 (holding statement that certain parties entered into a contract in connection with the issuance of certain insurance policies was conclusory and did not raise fact issue). *See also Geiselman v. Cramer Financial Group, Inc*., 965 S.W.2d 532, 536–38 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding that evidence was insufficient to prove that alleged assignee of notes was the owner of the notes, despite conclusory statements in that effect in affidavit). For this reason, CACH's claim fails.

11

## CONCLUSION

The evidence is legally insufficient to support the trial court's finding that the account and breach-of-contract claim in question were assigned to CACH. Accordingly, this court should sustain Ortega's second issue, reverse the trial court's judgment, and render judgment that CACH take nothing on its claim against Ortega. Because the court does not, I respectfully dissent.

/s/    Kem Thompson Frost
       Justice

Panel consists of Justices Frost, Brown, and Christopher (Brown, J., majority).