**Reverse and Remand and Opinion Filed June 28, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01491-CV

### 6200 GP, LLC, Appellant
### V.
### MULTI SERVICE CORPORATION, MULTI SERVICE TECHONOLOGY SOLUTIONS, INC., AND WORLD FUEL SERVICES CORPORATION, Appellees

### On Appeal from the 116th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-13-13014

## MEMORANDUM OPINION
Before Justices Francis, Brown, and Stoddart
Opinion by Justice Francis

6200 GP, LLC sued Multi Service Corporation (MSC), Multi Service Technology Solutions, Inc., and World Fuel Services Corporation for breach of agreements to which it was not a party. Appellees moved for summary judgment on the grounds that 6200 lacked capacity to sue and standing. The trial court granted appellees' motion and dismissed 6200 GP's claims with prejudice. In three issues, 6200 GP challenges the trial court's substantive and evidentiary rulings. Because we conclude 6200 GP raised a material fact issue on its right to sue, we reverse the trial court's summary judgment and remand for further proceedings consistent with this opinion.

6200 GP is one of many wholly owned subsidiaries of Realty Advisor, Inc. (RAI). In its second amended petition, 6200 GP alleged that another RAI subsidiary, Prime Income Asset Management, Inc. (Prime), became involved as an investor with Resurgent Software, Inc. (RSI) in

creating a maritime fueling system program that involved a product "designed to act like a credit card for ocean going vessels around the world" to buy bunker fuel. Because of "previous associations" with MSC and because MSC was already involved in maritime fueling, Prime "engaged MSC in discussions to create a joint venture to take advantage of the commercial market opportunity" and demonstrated to MSC the capabilities of the RSI software. In May 2010, Prime and MSC signed a preliminary memorandum of understanding to collaborate to form a joint venture to secure financing for and develop a software package based on the RSI software. Subsequently, Prime and its affiliates and MSC and its affiliates entered into a second Memorandum of Understanding and a Revised Memorandum of Understanding, both dated December 23, 2010 and both of which are at the heart of this dispute.

According to 6200 GP's allegations, in the "non-binding" Revised MOU, Prime and MSC agreed to form a joint venture. Rather than base the software platform upon RSI's system, they agreed they would integrate the RSI platform into MSC's software platform as deemed necessary by MSC. Additionally, MSC agreed to form a new entity that would be owned 75% by MSC and 25% by Prime. Under the second MOU, MSC agreed that if it abandoned the joint venture but continued to operate in the maritime environment using assets contributed by Prime or RSI, it would pay a consulting fee. At the time of these agreements, 6200 GP did not exist; it was subsequently formed in April 2012.

In December 2012, MSC was sold to World Fuels.[1] 6200 GP alleged that Prime was initially told the impact of the sale on their maritime program was "unknown" and that "business would continue as usual." But, by May 2013, Prime had been notified the MSC appellees would no longer pursue opportunities in the "maritime space." 6200 GP alleged, however, that World

---

[1] 6200 GP alleged World Fuels formed the third appellee, Multi Service Technology Solutions, Inc., as a wholly-owned subsidiary which, on information and belief, continued the business of MSC under the name of Multi-Service.

Fuels remained "heavily involved in fueling in the maritime space," including portions of the program that mimicked those proposed by RSI. 6200 GP alleged that rather than forming the joint venture or otherwise compensating Prime, the MSC appellees took the joint venture assets and misappropriated them "for their own ends." 6200 GP alleged it was an affiliate and successor-in-interest to Prime "relative to the project" and thus had standing to sue for injuries caused by the MSC appellees' wrongful acts and omissions, include the breaches of the agreements with Prime related to the maritime fueling payment system and software developed by RSI.

Appellees filed verified denials of 6200 GP's capacity to sue and also pleaded lack of standing. MSC served discovery requests for documents related to "6200 GP's succeeding to the interest of Prime . . . or any other entity with interest relevant to" the claims in this case. When 6200 GP failed to produce responsive documents, MSC filed a motion to compel. After a hearing, the trial court granted the motion and ordered 6200 GP to produce "documents sufficient to clearly demonstrate any basis of Plaintiff's alleged right or standing (by ownership, assignment or otherwise) to assert the claims made by Plaintiff in this case, including any claimed right to [do] so as any 'affiliate' or 'successor' of Prime . . . or any other entity."

In response, 6200 GP produced (1) a single-page "accounting summary" that shows the reclassification of an $847,678.48 "Inv. In Resurgence" moving from Prime to other RAI entities, ending with 6200 GP, and (2) three sets of RAI unanimous corporate consent documents, each signed by RAI's sole director Mickey Ned Phillips, which "recognize, ratify, and approve" intercompany transactions that resulted in "Maritime Venture" being "contributed" to 6200 GP. The consents state the "Maritime Venture" includes Prime's interest in Resurgence and its agreements with MSC. It is undisputed the accounting summary and the corporate consent documents were created post-litigation in response to the trial court's order.

After receiving the documents and deposing Phillips and Gene Bertcher, the corporate representative, appellees filed a traditional motion for summary judgment asserting 6200 GP lacked standing or capacity to sue for Prime's interests. Appellees argued 6200 GP did not have a legally binding assignment of Prime's rights against them, in part, because the only documents on which 6200 GP relied did not constitute assignments, did not exist before the lawsuit, and could not retroactively provide standing or capacity at the time 6200 GP filed suit. In support of their motion, appellees attached excerpts of the depositions of Phillips and Bertcher; Phillips' declaration in which he avers he has no personal knowledge of the transactions underlying the three unanimous consent documents; the three consent documents; an organizational chart; the accounting summary; the Revised MOU; and the second MOU.

6200 GP filed a response, asserting that through a series of internal transfers, Prime transferred the underlying agreements and claims to 6200 GP. 6200 GP attached the affidavit of Daniel J. Moos, president of 6200 GP, Prime, RAI, and other RAI entities relevant to this appeal. Attached to Moos's affidavit were the same accounting summary, consent documents, MOU, and Revised MOU relied upon by appellees. 6200 GP asserted Moos's affidavit proved up the "chain of title" and demonstrated the claims in this suit were assigned to it in 2012. Moos testified the terms "Inv. In Resurgence" and "Maritime Venture" were synonymous, included the MSC agreements, and referred to the claims in this lawsuit. Moos also testified to the intercompany transactions that moved the "Maritime Venture" from Prime to 6200 GP. He further explained the transactions were documented in the accounting system as reflected in the accounting summary.

In reply, appellees asserted 6200 GP's response contained no "contemporaneous evidence" that Prime assigned its interest in the MSC agreements at any time before the lawsuit was filed. Additionally, appellees objected to several paragraphs of Moos's affidavit as unsupported conclusions or legal conclusions.

A hearing was held on appellees' motion. After the hearing, 6200 GP filed a motion for leave to supplement the evidence and attached two new pieces of evidence: (1) six pages of journal entries from RAI's computerized accounting system of general ledgers of the accounts referenced in the previously offered accounting summary and (2) a redacted work page from RAI's 2012 tax return showing 6200 GP had an $847,678 investment as an asset. The transaction referenced in the journal entries is "Rcls Inv In Resurgence" in the amount of $847,678.48. Like the accounting summary, the entries showed the asset moved from Prime ultimately to 6200 GP.

The trial court granted appellees' motion and dismissed 6200 GP's claims with prejudice. Although the trial court did not separately rule on 6200 GP's motion for leave, the judgment states the trial court included the supplemental evidence in its review of the evidence. The day following the trial court's ruling, appellees filed written objections to the supplemental evidence. In part, they contended the journal entries at most provided evidence RAI "reclassified" Prime's $847,678.48 investment in Resurgence, not Prime's interests in the agreements with MSC. 6200 GP filed a motion for reconsideration and new trial, which the trial court denied. This appeal followed.

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, No. 16–0588, 2018 WL 1974473, at *3 (Tex. Apr. 27, 2018). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it was entitled to judgment as a matter of law. TEX. R. CIV. P. 166(a); *Lujan*, 2018 WL 1974473, at *3. If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 2018 WL 1974473, at *3. In reviewing the grant of summary judgment, we must credit evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in his or her favor. *Id.* We affirm the summary

judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

A party must have both standing to sue and capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Austin Nursing Ctr.,* 171 S.W.3d at 848–49 (quoting *Noosie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). While standing is a jurisdictional issue, lack of capacity is an affirmative defense. *Nelson v. Vernco Construction, Inc.*, No. 08-10-00222-CV, 2018 WL 2440773, at *14 (Tex. App.—El Paso May 31, 2018, judgm't set aside, op. not vacated). Standing is a component of subject matter jurisdiction, can never be waived, and is determined at the time the suit is filed. *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 650 (Tex. App.—Dallas 2013, pet. denied).

The question on summary judgment was whether 6200 GP was entitled to sue on the contract. A challenge to a party's privity of contract is a challenge to capacity, not standing. *Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 515 (Tex. App.—Dallas 2014, no pet.); *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *14 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op. on reh'g). Privity is established by proving the defendant was a party to an enforceable contract with either the plaintiff or someone who assigned the cause of action to the plaintiff. *John C. Flood*, 408 S.W.3d at 651.

In its most general sense, the word "assign" or "assignment" means the transfer of property or some right or interest from one person to another. *Concierge Nursing Ctrs., Inc. v. Antex Roofing, Inc.*, 433 S.W.3d 37, 45 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). It is a manifestation by the owner of a right of his intention to transfer the right to an assignee. *Pape*

*Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 399 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).  Contractual rights may be assigned orally unless the contract giving rise to the claim, or a statute pertaining to the claim, requires a written transfer.  *Adkins Servs., Inc. v. Tisdale Co.*, 56 S.W.3d 842, 845 (Tex. App.—Texarkana 2001, no pet.).  Oral testimony proving the fact of the assignment, as contrasted with its contents, is admissible even if the assignment is written, if it is shown the witness has personal knowledge that the claim has been assigned.  *Id.*

To recover on an assigned cause of action, the party claiming the assigned right must plead and prove that a cause of action capable of being assigned existed and was assigned to the party alleging assignment occurred.  *Pape Equip.*, 737 S.W.2d at 399.  Once a cause of action is assigned, "the assignee becomes the real party in interest with authority to prosecute the suit to judgment." *So. Co. Mut. Ins. Co., v. Ochoa*, 19 S.W.3d 452, 465 (Tex. App.—Corpus Christi 2000, no pet.).

In its first issue, 6200 GP does not argue that appellees failed to meet their initial summary judgment burden; rather, it argues it raised a fact issue on whether it had been assigned Prime's interest in the MSC contracts through Moos's affidavit, the accounting summary, the corporate consent documents, the late-filed general ledger journal entries, and tax return worksheet.

Appellees counter that 6200 GP failed to produce any competent evidence of an assignment and, in particular, that RAI assigned Prime's agreements with MSC by way of the "Maritime Venture."  They argue that Moos's affidavit, offered to oppose the motion for summary judgment, contained inadmissible conclusory statements which were properly excluded as evidence.  They further argue his statements cite no contemporaneous facts or documents evidencing the transactions or the manifestation of Prime's intent to assign its rights in the agreements with MSC to 6200 GP.   In addition, they assert the trial court did not consider the late-filed supplemental evidence, which included Bertcher's declaration, printouts of the journal entries, and the tax worksheet for the year ending December 31, 2012.  Alternatively, they assert that if the trial court

did consider the supplemental evidence, it could have determined the ledger excerpts "merely documented the 'reclassification' of Prime's investment in Resurgence" and were not probative of an assignment of Prime's agreements with MSC.

We begin by considering whether the late-filed supplemental evidence is properly before us. Generally, a trial court may not consider summary judgment evidence not referenced or incorporated into the motion. *Lujan v. Navistar, Inc.*, 503 S.W.3d 424, 432 (Tex. App.—Houston [14th Dist.] 2016), *rev'd on other grounds,* 2018 WL 1974473 (Tex. Apr. 27, 2018). When nothing appears in the record to indicate that late-filed summary judgment was filed with leave of court, we presume the trial court did not consider it. *Id*. However, a trial court may accept summary judgment evidence filed late, even after summary judgment, as long as the court affirmatively indicated in the record that it accepted or considered the evidence. *Id.*

Here, the judgment recites the following: "Having reviewed the Motion, response and reply thereto, pleadings, summary-judgment evidence *and supplemental filed thereto*, and arguments of counsel, the Court finds that the Motion is well taken and that summary judgment should be rendered for Defendants." The italicized portion was handwritten by the trial judge. We conclude the plain language of the judgment establishes that the trial court accepted and considered the supplemental evidence when granting the summary judgment. Thus, the supplemental evidence will be included in our review.

We now turn to the other evidence, beginning with Moos's affidavit. In his affidavit, Moos stated he was president and "control person" of each entity involved in the assignment and was involved in the process "of effecting such assignments." He also said he was responsible for negotiating the MOU and Revised MOU with MSC.

Moos generally testified that in 2008 and 2009 Prime entered into agreements with Resurgence Software Inc. (RSI), including a Securities Acquisition Agreement, purchased RSI

stock, and made a loan to RSI, and the "business venture" with RSI was "part of a larger effort to develop a maritime fueling program." He then generally testified to events in December 2010: (1) Prime, RSI, and MSC entered a Letter of Intent to collaborate and create a joint venture "to provide an enhanced fueling and other services solution to the maritime industry"; (2) Prime and RSI entered a Letter of Intent relating to the "Company's" interest in the shares of stock of RSI, the joint venture with MSC, and the loan embodied by the RSI note; and (3) Prime and MSC entered the MOU and Revised MOU. According to Moos, the "preliminary discussions with RSI had always involved a third party to complete the maritime fueling venture the parties were developing." Then, Moos testified:

13. . . . Therefore, both me and the various entities have always considered the term "Inv in Resurgence" and "Maritime Venture" to be synonymous and refer to, among other things: the venture relating to maritime fueling and testing by and among Prime and its affiliates, Multiservice Corporation and its affiliates, and RSI, including without limitation, the RSI LOI, the RSI Agreement, the RSI Note, any shares of RSI Stock, the NDA, the MSC LOI, the RSI LOC, the MOU, and the Revised MOU. We also considered the term "Inv in Resurgence" and "Maritime Venture" to refer to the claims at issue in the above-styled lawsuit.

Moos then testified to how the "Maritime Venture" was assigned to 6200 GP: On January 3, 2012, Prime "assigned and conveyed" it to Pillar Income Asset Management, Inc. for an adjustment to the Prime-Pillar Account in the amount of its book value, Pillar "distributed" it to Realty Advisors, LLC (RAL), and RAL "distributed" the Maritime Venture to Realty Advisors, Inc. (RAI). Then, on April 30, 2012, RAI "contributed" the Maritime Venture to 6200 GP, a then wholly-owned subsidiary of RAI." As to each transaction, Moos testified the parties "manifested their intent for the assignment at that time." Finally, Moos attested the transactions he described were documented in the accounting system and were reflected in an accounting summary attached as an exhibit to his affidavit.

Appellees objected to all or part of eleven paragraphs of Moos's affidavit, including that he "considered" the terms "Inv in Resurgence" and "Maritime Venture" synonymous and his

testimony regarding each transaction assigning, distributing, or contributing the asset as either an unsupported conclusion or unsupported legal conclusion. They assert the statements cite "no supporting facts" but do not otherwise suggest what additional facts were needed.

The objection that a statement is "conclusory" is an objection frequently made to challenge affidavits in summary judgment cases. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.— Houston [1st Dist.] 1997, no writ.). A statement is conclusory if it provides a conclusion but no underlying facts in support of the conclusion. *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.— Dallas 2004, pet. denied). A "conclusory" statement may set forth an unsupported factual conclusion or unsupported legal conclusion. *Rizkallah*, 952 S.W.2d at 587. Conclusory statements without factual support are not credible, and are not susceptible to being readily controverted. *Id.*; TEX. R. CIV. P. 166a(c).

Having reviewed the affidavit, we cannot agree that Moos's testimony that "Inv in Resurgence" and "Maritime Venture" were synonymous and referred to, among other things, the agreements with MSC is an unsupported conclusion. Moos attested he was the president of Prime, Pillar, RAL, RAI, and 6200 GP, which was every entity through which he said the investment moved before its alleged assignment to 6200 GP. Moos explained he was the control person and was involved in the assignments and he generally set out the relationships between Prime, RSI, and MSC in attempting to create a joint venture on fueling for the maritime industry. To the extent underlying "facts" were needed to support Moos's testimony on this point, these facts provided sufficient support for his statement explaining the two terms. Moreover, Bertcher gave testimony at his deposition that is similar to Moos's. He testified the "$847,000 number" preexisted the transfer of the Maritime Venture from Prime to 6200 GP. Bertcher said as an officer of RAI, he was authorized to testify on behalf of the various entities (Prime, Pillar, RAL, and 6200 GP), and

that he understood that Maritime Venture included the investment in Resurgence and the failed joint venture attempt with appellees.

Appellees also objected to portions of paragraphs 14–17, 19, and 20, in which Moos attests the RAI entities "assigned," "distributed," and "contributed" the Maritime Venture from Prime to 6200 GP and "manifested their intent for the assignment at that time." They contend these paragraphs "cite no, let alone contemporaneous, facts or documents evidencing the alleged transactions or the manifestations of Prime's intent to assign rights in the agreements with MSC to 6200 GP." As such, they contend they are conclusory. Again, we disagree.

A person may testify to a sale and assignment without providing any documentary evidence. *Ortega v. CACH, LLC*, 396 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (in debt collection action, holding that bank officer's affidavit testimony that "agreement and account was, on 8/18/2009 sold, transferred and set over unto CACH, LLC" is not conclusory); *Prudential Ins. Co. v. Black*, 572 S.W.2d 379, 380 (Tex. Civ. App.—Houston [14th Dist.] 1978, no writ) (allowing partner in partnership to testify to sale and assignment of lease without underlying sale and assignment documents). As previously stated, Moos attested he had personal knowledge regarding the statements in his affidavit and explained how he had that knowledge. He testified that at the time of the transactions referred to in the paragraphs, he was a "control person" of each of the entities and was "also involved in the process of effecting such assignments." Thus, it is clear Moos had personal knowledge of the particular assignment, distribution, and contribution of the asset as it moved from one entity to another.

Assuming contemporaneous "facts or documents" were necessary to show the "manifestation of intent at the time," Moos's testimony was supported by the journal entries and the tax work sheet, both of which showed a contemporaneous intent to contribute the asset to 6200 GP in 2012. As explained by Bertcher in his declaration to which the evidence was attached, the

journal entries were printouts from RAI's computerized accounting system of general ledgers of the accounts referenced in the accounting summary and were "recorded at the time" reflected in the exhibit, January 3, 2012. Additionally, Bertcher stated that at the time the Maritime Venture was contributed by RAI to 6200 GP, 6200 GP "was a single member LLC and thus a disregarded entity for tax and accounting purposes." Bertcher further stated the Maritime Venture was "reflected as a 847,678 investment" of 6200 GP on RAI's 2012 tax return.

Appellees assert the journal entries do nothing more than refer to the "reclassification" of Prime's $847,678.48 investment in Resurgence, not the assignment of Prime's rights in the agreements with MSC. But we have determined that Moos provided that necessary link by testifying the Maritime Venture and Investment in Resurgence were synonymous and included the MSC agreements.

Appellees additionally complain 6200 GP's evidence contains errors and inconsistencies rendering it incompetent. For example, they point out in contrast to Moos's affidavit and the corporate consent documents, the accounting evidence (1) "incorrectly implies" that Prime's investment went directly from Pillar to RAI, rather than from Pillar to RAL, then RAL to RAI, then RAI to 6200 GP and (2) incorrectly reflects that RAI recorded Prime's Investment in Resurgence on 6200 GP's books before 6200 GP existed. Likewise, they argue the corporate consents contained inconsistencies: (1) the first consent ratified and approved the sale and assignment of the Maritime Venture from Pillar to Prime, instead of from Prime to Pillar, which 6200 GP acknowledged was an "absolute mistake;" and (2) the first consent has an "effective date" of January 2, 2012, but the transactions that it purports to ratify and approve occurred on January 3, 2012. Moreover, they direct us to Mickey Ned Phillips's declaration in which he said that although he signed the consents as sole director, he had "no personal knowledge of the transactions underlying the consents" as well as his deposition testimony that he knew nothing about RAI's

–12–

business or even who ran the company.  Such internal inconsistencies, however, go only to the weight a fact finder would give such evidence.  *Cf. FFP Mktg. Co. v. Long Lane Master Tr. IV*, 169 S.W.3d 402, 410 (Tex. App.—Fort Worth 2005, no pet.) (concluding fact issue existed and reversing summary judgment when movant's affidavit evidence conflicted with attached documents regarding putative assignees' status as legal owners notes and guaranties).

Having concluded the complained-of evidence was admissible, we likewise conclude it was sufficient to raise a fact issue on whether 6200 GP had capacity to sue on the MSC agreements. Moos testified to the intercompany transfers and the journal entries and internal tax worksheet supported his testimony.  We sustain the first and second issues.  Our resolution of these issues makes its unnecessary to address the third issue.

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.


/Molly Francis/
MOLLY FRANCIS
JUSTICE


161491F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

6200 GP, LLC, Appellant

No. 05-16-01491-CV      V.

MULTI SERVICE CORPORATION,
MULTI SERVICE TECHONOLOGY
SOLUTIONS, INC., AND WORLD FUEL
SERVICES CORPORATION, Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-13014.
Opinion delivered by Justice Francis;
Justices Brown and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that appellant 6200 GP, LLC recover its costs of this appeal from appellees MULTI SERVICE CORPORATION, MULTI SERVICE TECHONOLOGY SOLUTIONS, INC., AND WORLD FUEL SERVICES CORPORATION.

Judgment entered June 28, 2018.